JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise A. Schulman
Josef Nussbaum
Laura Reznick

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.JK-LLP.com

May 11, 2016

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan
U.S. District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    Orlando v. Liberty Ashes, Inc., et al.
              No. 15-cv-9434 (RJS)

Dear Judge Sullivan:

      Together with the Law Office of Finn W. Dusenbery, we represent the Plaintiffs in the above-referenced action. We submit this letter in response to Defendants' summary judgment pre-motion letter dated May 6, 2016. As set forth below, Plaintiffs seek to cross-move for summary judgment when they oppose Defendants' summary judgment motion.

## I. The motor carrier exemption does not apply to Plaintiffs

      Defendant Liberty Ashes, Inc. ("Liberty") is a waste removal company. The five named and opt-in Plaintiffs worked for Liberty as drivers and helpers. In those capacities, the Plaintiffs picked up Liberty's customers' trash and recyclables and brought those materials to various facilities. The trash was brought to transfer stations, which collect trash and then send it to another location for final disposal, or an incinerator. The recyclables were brought to facilities that purchased and processed recyclables and then sold those recyclables to a subsequent purchaser. Plaintiffs worked entirely within the state of New York. In this lawsuit, Plaintiffs seek, *inter alia*, unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and New York Labor Law.

      Under 29 U.S.C. § 213(b)(1), the overtime provisions of the FLSA do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to" 49 U.S.C. § 31502, *i.e.*, employees to whom the FLSA's motor carrier exemption applies. As is relevant in this case, 49 U.S.C. § 31502(b)(2) gives the Secretary of Transportation authority to establish qualifications and maximum hours of service for employees of a "motor private carrier" as needed to promote safety. A motor private carrier is a person or company that, *inter alia*, transports property. 49 U.S.C. § 13102(15). The Secretary of Transportation does not have authority to establish

1

qualifications and maximum hours of service for employees engaged in wholly intrastate activities. 49 U.S.C. § 13501. The motor carrier exemption is "narrowly construed against the employers seeking to assert [it] and [its] application limited to those establishments plainly and unmistakably within their terms and spirit. The burden of invoking th[is] exemption[] rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (internal quotation marks and citations omitted).

In this case, it is undisputed that Defendants' employees never traveled outside the state of New York in the course of their employment. Therefore, the interstate commerce requirement of the motor carrier exemption is satisfied only if the trash and recyclables Defendants transported were "involved in a practical continuity of movement in the flow of interstate commerce." *Bilyou*, 300 F.3d at 223 (internal quotation marks omitted). In determining whether there was a practical continuity of movement in interstate commerce, a primary consideration is the shipper's intent at the time of shipping with respect to the final destination of the goods transported. *E.g., Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 58 (2d Cir. 2012). In this case, Defendants cannot show that they had the requisite intent to satisfy the interstate commerce requirement.

Some (but by no means all) of the materials Liberty transported ultimately went to a destination outside the state of New York. However, the record is clear that Liberty's intent with respect to the trash and recyclables that Plaintiffs transported was simply to deliver them to in-state facilities. Liberty had no influence or control over what happened to them next. Plaintiffs deposed five witnesses who testified on behalf of transfer stations and recycling facilities to which Liberty delivered. None of them could recall communicating with Liberty prior to this litigation about the ultimate destination of the materials Liberty delivered, much less receiving any directives from Liberty regarding the ultimate destination of the materials. These third-party witnesses also testified that their companies (1) had total control of and responsibility for the materials they received from Liberty once Liberty completed its delivery (in other words, they owned the materials at that point) and (2) decided where to send the trash they received and to whom to sell their recyclables. In addition, the third-party witnesses testified that they did not know where the materials Liberty brought them ultimately ended up, because Liberty's materials were commingled with those delivered by other companies and were impossible to track.

These facts put this case on all fours with *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435 (D. Md. 2014), which declined to apply the motor carrier exemption to drivers and helpers of a refuse company. As the *Veney* court stated in finding the motor carrier exemption inapplicable: "Defendants have nothing to do with determining what the ultimate destination of the [trash and recyclables] is, or [have] any interest in it, or any duty to discharge in respect to it. Defendants' transportation of property ends at the dump. What happens to the trash and recyclables after that is determined by someone else. That it may wind up outside Maryland is of no moment to Defendants." *Id.* at 444 (internal quotation marks omitted; alterations in original).

Additionally, Plaintiffs were not subject to the motor carrier exemption because (1) garbage is not property under the Motor Carrier Act and (2) the recyclables that Plaintiffs delivered and which ultimately left the state of New York were processed by the New York recycling facilities, which broke any possible link to interstate commerce.

2

In contrast to *Graham v. Town & Country*, 865 F. Supp. 2d 952 (W.D. Mo. 2011), which Defendants cite, many courts, following decisions of the Interstate Commerce Commission and recognizing the negative value of trash, have correctly declined to find that trash is property under the Motor Carrier Act. *E.g.*, *Charlton v. Republic Servs. of Fla.*, No. 09-22506-CIV, 2010 U.S. Dist. LEXIS 54124, at *13, 2010 WL 2232677 (S.D. Fla. June 2, 2010); *Alice v. GCS, Inc.*, No. 05 C 50132, 2006 U.S. Dist. LEXIS 65498, 2006 WL 2644958 (N.D. Ill. Sept. 14, 2006); *see also Veney*, 28 F. Supp. 3d at 442. As such, Plaintiffs' transportation of trash that ultimately went out of state did not subject them to the motor carrier exemption.

The recyclables (essentially, cardboard) that some of the Plaintiffs transported was processed at New York recycling facilities before it was sent to another destination. This processing broke any possible chain of interstate commerce. Specifically, the materials were commingled with materials delivered by other companies and baled (*i.e.*, compressed into large blocks). Third-party witnesses from recycling facilities testified that their customers would only purchase baled cardboard, indicating that baled cardboard is materially different from the loose cardboard that Liberty delivered. This amount of processing was interrupted the continuity of movement of the recyclables that Plaintiffs delivered, and Plaintiffs' transportation of recyclables did not satisfy the interstate commerce requirement of the motor carrier exemption. *Alice*, 2006 U.S. Dist. LEXIS 65498, at *12 ("[W]e agree with plaintiff that separating, sorting, and commingling the non-reusable waste prior to shipping it across state lines sufficiently interrupted the continuity of movement of the original product."). Thus, regardless of Liberty's intent, the motor carrier exemption did not apply to Plaintiffs.

## II. Procedural issues

Plaintiffs submit that the extended briefing schedule Defendants have requested is inappropriate. We respectfully request that Defendants' motion papers be due on June 13, 2016. In the interest of efficiency and to reduce the total number of briefs, Plaintiffs request that their opposition/cross-motion papers be due on July 15, 2016, Defendants' reply/cross-motion opposition papers be due on August 15, 2016, and Plaintiffs' reply papers be due on September 7, 2016. Plaintiffs request a somewhat extended period of time for their reply because the undersigned will be on vacation from August 19, 2016 until August 29, 2016.

Plaintiffs also seek leave to file seven declarations in connection with these motions rather than the five permitted under the Court's Individual Practices. This would permit each Plaintiff to submit a declaration, along with an attorney declaration with each brief for submission of exhibits. As Defendants chose not to depose any of the Plaintiffs, declarations are the only way for them to submit testimony.

We thank the Court for its attention to this matter.

Respectfully submitted,

Denise A. Schulman

cc: All Counsel

3