# Exhibit 12

# DISPOSAL SERVICES AGREEMENT

Covanta 4Recovery, L.P.
445 South Street, Morristown, NJ 07960
Phone: (862) 345-5000 Fax: (862) 345-5080
("DISPOSER")

| | |
|---|---|
| DATE: | 01/01/14 |
| ACCOUNT #: | |
| ACCOUNT MANAGER: | |

NAME: Liberty Ashes, Inc.

TYPE OF BUSINESS (Select One):

X Corporation ☐ Subchapter S. Corp. ☐ Limited Liability Co. ☐ Sole Proprietorship
☐ Partnership ☐ Limited Partnership ☐ Joint Venture ☐ Other

PHYSICAL ADDRESS: 112 Phylis Court
CITY: Elmont STATE: NY ZIP CODE: 11003
BILLING ADDRESS: Same
CITY: STATE: ZIP CODE:
PHONE NUMBER: 718-739-7224 FAX NUMBER:
CONTACT PERSON: Stephen Bellino TITLE:
PERMIT TYPE/NUMBER:

**DISPOSAL LOCATION (THE "FACILITY") AND DISPOSAL PRICE:**

FACILITY NAME: Covanta Hempstead EFW Facility
ADDRESS: 600 Merchants Concourse, Westbury, NY 11590
DELIVERY HOURS: 5am Monday through 2pm Saturday, except Holidays when closed.
DISPOSAL PRICE: $61.20 per ton

TERM: January 1, 2014 through December 31, 2015, unless sooner terminated in accordance with the provisions herein.

TYPE OF WASTE: ("Acceptable Waste") Municipal solid waste. Customer hereby represents, warrants and covenants to Disposer that none of the Acceptable Waste delivered pursuant to this Agreement will have been collected by or transferred, transported or disposed of on behalf of a municipality or other governmental entity or public authority.

QUANTITY TO BE DELIVERED: Customer shall deliver, and Disposer shall receive and dispose of 26,000 tons of Acceptable Waste per year. All Acceptable Waste shall be delivered approximately ratably throughout the year. Delivery shall be FOB the Facility.

INITIAL FEES AND TAXES: None

## TERMS AND CONDITIONS OF DISPOSAL SERVICES AGREEMENT

1. ACCEPTABLE WASTE: Customer shall deliver, and Disposer shall receive and dispose of, all of Customer's Acceptable Waste (hereinafter defined) as specified on the first page of this Agreement. "Acceptable Waste" means municipal solid waste and non-hazardous construction and demolition debris and excludes any waste defined or regulated as hazardous by any federal, state, local, or provincial authority. Acceptable Waste excludes incinerator residue, regulated medical waste, substances in gaseous form, special nuclear or by-product materials within the meaning of the Atomic Energy Act of 1954, as amended, and any waste prohibited by any applicable permit condition. Acceptable Waste must be of a size and composition such that the Facility is able to process it. Acceptable Waste excludes any material that has the reasonable possibility of adversely affecting the operation of any part of the Facility. Disposer may reject any and all waste which is not Acceptable Waste. Disposer may inspect random material on incoming waste vehicles. Disposer shall





have no obligation to accept title to or process non-Acceptable Waste. If non-Acceptable Waste arrives at the Facility, Disposer may (but shall have no obligation to) arrange to have it picked up, transported, and disposed of at Customer's expense, paid in advance if Disposer so demands. In the alternative, and to the extent allowed under applicable law, Disposer may instruct Customer to pick up, transport and dispose of such waste at Customer's expense and provide Disposer with written proof of disposal in compliance with all applicable laws and regulations. Title to Acceptable Waste shall vest in Disposer only after acceptance of the Acceptable Waste. In the event that Disposer subsequently determines that any materials accepted from Customer are not Acceptable Wastes, then Disposer may revoke its acceptance of such non-Acceptable Waste, so long as the material has not been combined with any other materials by Disposer, and manage such non-Acceptable Waste as outlined in this paragraph. Any and all liability associated with Acceptable Waste shall pass to Disposer upon its acceptance of the waste; PROVIDED, HOWEVER, THAT IF CUSTOMER DELIVERS ANY NON-ACCEPTABLE WASTE, CUSTOMER SHALL INDEMNIFY DISPOSER FOR ALL LOSSES, COSTS, AND DAMAGES (INCLUDING ATTORNEY'S FEES AND COSTS) ("COSTS") ARISING THEREFROM, EXCEPT COSTS ARISING FROM DISPOSER'S GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT. Customer is prohibited from bringing any commingled non-Acceptable Waste along with Acceptable Waste for disposal, but in the event that Customer does bring any such non-Acceptable Waste, CUSTOMER SHALL BE SOLELY RESPONSIBLE FOR COSTS ASSOCIATED WITH SUCH NON-ACCEPTABLE WASTE, SPECIFICALLY INCLUDING ALL COSTS ASSOCIATED WITH DISPOSER'S NEGLIGENCE, BUT EXCLUDING COSTS ASSOCIATED WITH DISPOSER'S GROSS NEGLIGENCE AND INTENTIONAL MISCONDUCT, IN HANDLING OR DISPOSING OF SUCH NON-ACCEPTABLE WASTE. A surcharge of $500.00 may be charged by Disposer (and if charged, shall be paid by Customer) for any loads which upon inspection, are found to contain non-Acceptable Waste. This surcharge is in addition to any amounts owed under the indemnities in this Agreement. Delivery of non-Acceptable Waste shall be grounds for immediate termination of this Agreement.

2. <u>PAYMENT</u>: Customer shall make payment within 30 days of the date of Disposer's invoice at the address specified on such invoice. **Amounts owed to Disposer after invoice due date shall accrue interest each day such invoice is not paid at the maximum rate permitted by applicable law.** Customer shall also pay Disposer's reasonable investigation costs and attorney's fees for purposes of collection of amounts owed by Customer. At Disposer's option, based on the results of a credit check, Disposer may require, and Customer shall provide as security, an escrow fund or a payment bond sufficient to cover processing Acceptable Waste brought to the Facility by Customer. A fee of $35.00 will be charged on all returned checks.

3. <u>INDEMNIFICATION:</u> Disposer shall indemnify and hold harmless Customer, its subsidiaries, and affiliate companies, from and against any and all loss, damage, suits, liability and expenses (including, but not limited to, reasonable investigation and legal expenses) arising out of any claim for loss of or damage to property, including Disposer's and the Facility's property, contamination of or adverse effects on the environment, and injuries to or death of persons, including Customer's, Disposer's or Facility's employees, caused by or resulting from: (1) the negligence or willful misconduct of Disposer, its employees, haulers, contractors, subcontractors or agents; or (2) Disposer's breach of any term or provision of this Agreement.

   Customer shall indemnify and hold harmless Disposer and the Facility(ies), their partners and parents, subsidiaries, and affiliate companies (collectively, the "Indemnified Parties"), from and against any and all loss, damage, suits, liability and expenses (including, but not limited to, reasonable investigation and legal expenses) arising out of any claim for loss of or damage to property, including Disposer's and the Facility's property, contamination of or adverse effect on the environment, and injuries to or death of persons, including Customer's, Disposer's or Facility's employees, caused by or resulting from: (1) the negligence or willful misconduct of Customer, its employees, haulers, contractors, subcontractors or agents; or (2) Customer's breach of any term or provision of this Agreement. Notwithstanding anything contained in this Agreement to the contrary, Customer assumes responsibility for (1) any injury or loss incurred by its employees or agents while on the Facility's premises (except that caused by Disposer's gross negligence), (2) any damage to Customer's property, including, but not limited to Customer's vehicles, that results from Disposer or the Facility providing unloading assistance to Customer while Customer is on the Facility's premises (except that caused by Disposer's gross negligence), and (3) the compliance with all of the Facility's rules and regulations, particularly those relating to safety and health.

   Neither party shall have any liability to the other for any consequential or incidental damages.

4. <u>COMPLIANCE WITH AND GOVERNING LAW:</u> Both parties shall comply with all applicable local, state and federal laws. Customer shall also comply with work and safety rules promulgated to govern operations at the Facility. This Agreement, the interpretation hereof and performance hereunder shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflict of law.

5. <u>FORCE MAJEURE:</u> Except for the obligation to pay for services rendered, neither party hereto shall be liable for its failure to perform hereunder due to contingencies beyond its reasonable control, including, but not limited to, strikes, riots, war, fire, nor acts of God.

6. <u>DEFAULT AND TERMINATION:</u> If either party fails to perform any material obligation under this Agreement or breaches any material warranty under this Agreement, and if such failure or such breach continues for more than 30 days

after the non-breaching party gives the breaching party written notice thereof, then in addition to any rights or remedies the non-breaching party may have at law or in equity, such party may terminate this Agreement by giving written notice of termination to the breaching party and recover any damages occasioned by such failure or breach.

7. INSURANCE: Customer shall maintain worker's compensation insurance providing statutory benefits, employer's liability coverage of not less than $500,000 and automobile and commercial general liability insurance with policy limits of not less than $5,000,000 each occurrence for bodily injury or death and $5,000,000 each occurrence for property damage liability. Limits for automobile and general liability can be satisfied either through a single policy or combination of primary and umbrella/excess coverage. Where umbrella/excess coverage is used, coverage must be "follow form" or as broad as primary coverage. Customer shall cause the aforesaid policies to be duly and properly endorsed by Customer's insurance underwriter's as follows: a) to provide endorsement naming as additional insured, except for workers' compensation, and waiving subrogation in favor of the Indemnified Parties; b) to contain a standard cross liability and severability clause; c) to provide that said insurances shall be primary in all instances with respect to Disposer's insurances, which shall be secondary and non-contributing at all times; and d) to provide contractual liability coverage for all liability assumed by Customer under the terms of this Agreement. These limits are considered minimum and in no way intended to limit the Customer's liability under this Agreement. Prior to commencing any Services under this Agreement, Customer shall furnish Disposer with Certificates of Insurance issued by Customer's insurer(s), as necessary, in a form acceptable to Disposer, as evidence that the insurance policies, including all applicable endorsements, providing the required coverage's, conditions, and limits required by the section are in full force and effect. Each such certificate shall contain a statement of the insurer's obligation to notify Disposer, in writing, at least 30 days prior to cancellation of any policy covered hereunder. Disposer also reserves the right to request and receive certified copies of any or all of such insurance policies and or endorsements. Disposer shall not be obligated, however, to review such insurance certificates, policies, and endorsements, or to advise Customer of any deficiencies in such documents, and such receipt shall not relieve Customer from or be deemed a waiver or Disposer's right to insist on strict fulfillment of Customer's obligations herein.

8. FEES/TAXES: In addition to the Disposal Price, Customer shall pay such fees as Disposer may impose from time to time by notice to Customer (including, by way of example only, administrative fees and environmental fees), with Disposer to determine the amounts of such fees in its discretion up to the maximum amount allowed by applicable federal, state, local and provincial laws, regulations, ordinances, rules, permits, licenses and governmental orders and directives (collectively, "Applicable Laws"). Without limiting the foregoing, Customer shall pay Disposer a fuel surcharge fee in the amount shown on Disposer's invoices, which amount Disposer may increase or decrease from time to time by showing the amount on the invoice. The initial amounts for the fees listed in this paragraph are set forth on the first page of this Agreement, but are subject to change from time to time as described in this paragraph.

In addition to the Disposal Price, Customer shall pay all federal, state, local or other taxes, fees (including host fees), surcharges and other similar charges related to the acceptance or disposal of Acceptable Waste or the operations or activities of the Facility that are imposed by law, ordinance, regulation, agreement with a governmental authority, governmental audit or otherwise (collectively, "Taxes"). The initial amount of Taxes is set forth on the first page of this Agreement, but is subject to change from time to time as described in this paragraph. In addition, Disposer shall have the right to increase the Disposal Fee from time to time by the pro-rata amount (determined by relative tonnage of Acceptable Waste delivered by Customer and accepted by Disposer divided by the total tonnage processed at the Facility) of any increase in operating costs or capital costs of the Facility as a result of a change in Applicable Laws. Any such increase shall be effective immediately upon written notice by Disposer to Customer.

9. CONFESSION OF JUDGMENT: **CUSTOMER HEREBY EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD WITHIN THE UNITED STATES, OR ELSEWHERE, TO APPEAR FOR CUSTOMER WITH DECLARATION FILED, AND CONFESS JUDGMENT AGAINST CUSTOMER IN FAVOR OF DISPOSER, ITS SUCCESSORS AND/OR ASSIGNS, AS OF ANY TERM, FOR ANY COMPENSATION, SUM OR AMOUNT TO WHICH DISPOSER IS ENTITLED TO RECEIVE FROM CUSTOMER UNDER THIS DISPOSAL SERVICES AGREEMENT, INCLUDING INTEREST THEREON AT THE RATE OF TEN PERCENT (10%), COMPOUNDED QUARTERLY (HEREAFTER "DAMAGES"), TOGETHER WITH AN ATTORNEY'S FEE FOR COLLECTION OF SAME OF TWENTY PERCENT (20%) OF THE TOTAL AMOUNT OF SUCH DAMAGES, TOGETHER WITH COSTS OF SUIT, AND CUSTOMER HEREBY WAIVES ALL ERRORS, DEFECTS AND IMPERFECTIONS IN ENTERING SAID JUDGMENT OR IN ANY WRIT, OR PROCESS, OR PROCEEDING THEREON OR THERETO OR IN ANY WISE TOUCHING OR CONCERNING THE SAME; AND FOR THE CONFESSION AND ENTRY OF SUCH JUDGMENT, THIS DISPOSAL SERVICES AGREEMENT, OR A TRUE AND CORRECT COPY THEREOF, SHALL BE SUFFICIENT WARRANT AND AUTHORITY. THE AUTHORITY AND POWER CONTAINED HEREIN TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ONE EXERCISE THEREOF, BUT JUDGMENT MAY BE CONFESSED FROM TIME TO TIME AND AS OFTEN AS THERE IS AN OCCURRENCE OF ANY EVENT OF DEFAULT, AND FURTHERMORE SUCH AUTHORITY AND POWER MAY BE EXERCISED DURING THE TERM AND**





**ANY EXTENSION OR RENEWAL OF THIS DISPOSAL SERVICES AGREEMENT, OR AFTER THAT EXPIRATION OR EARLIER TERMINATION OF THIS DISPOSAL SERVICES AGREEMENT.**

10. Neither party shall use the name of the other party or any of its affiliates or related companies or customers in any publicity or advertising or disclose any information related to the existence of this Agreement or the terms and conditions of this Agreement hereof, without the prior written consent of the other party.

11. **MISCELLANEOUS**. (a) No changes to this Agreement will be effective unless in writing and signed by the party to be bound. (b) No failure by either party to insist on performance shall operate as a waiver of other or subsequent breaches. (c) Neither party shall assign its rights or delegate its duties under this Agreement to any other person without the prior written consent of the other party, such consent shall not be unreasonably withheld. This Agreement shall inure to the benefit of and bind the respective successors and permitted assigns of the parties hereto. (d) If any provision of this Agreement is held to be unenforceable, this Agreement shall be reformed, but only to the extent necessary to render it enforceable. This Agreement may be executed in any number of counterparts, each of which when so executed shall be an original and all of which together shall constitute one and the same instrument.

**CUSTOMER:**

[signature] 2/13/14

*AUTHORIZED SIGNATURE* *DATE*

STEPHEN BELLINO SEC/TREAS.

*PRINT NAME* *TITLE*

**DISPOSER:**

[signature] 1/27/14

*AUTHORIZED SIGNATURE* *DATE*

DEREK VEENHOF EVP

*PRINT NAME* *TITLE*