H2dnorlc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

CARL ORLANDO, JR., on behalf
of himself and others
similarly situated, et al.,

                Plaintiffs,

        v.                              15 Civ. 9434 (RJS)

LIBERTY ASHES, INC.; FRANCESCO
BELLINO; MICHAEL BELLINO, JR.;
STEPHEN BELLINO; and MICHAEL
BELLINO,

                Defendants.

-------------------------------x
                                        New York, N.Y.
                                        February 13, 2016
                                        2:30 p.m.

Before:

                    HON. RICHARD J. SULLIVAN,

                                        District Judge

                            APPEARANCES

JOSEPH & KIRSCHENBAUM, LLP
        Attorneys for Plaintiffs
BY:  DENISE A. SCHULMAN
        -and-
    FINN W. DUSENBERY

TRIVELLA & FORTE LLP
        Attorneys for Defendants
BY:  CHRISTOPHER A. SMITH
    ARTHUR J. MULLER III

2

H2dnorlc

```
 1              (Case called)
 2              THE COURT:  Let me take appearances.
 3              For the plaintiff?
 4              MS. SCHULMAN:  Good afternoon, your Honor Denise
 5    Schulman and Finn Dusenberry.
 6              THE COURT:  Ms. Schulman, good afternoon.
 7              And with you at counsel table?
 8              MR. DUSENBERRY:  Finn Dusenberry, your Honor.
 9              THE COURT:  Mr. Dusenberry.
10              Mr. Kirschenbaum couldn't be bothered or he's just not
11    up to it?
12              MS. SCHULMAN:  Not available.
13              THE COURT:  You are better off without him.
14              For the defendant?
15              MR. SMITH:  Yes, good afternoon, your Honor,
16    Christopher Smith.
17              THE COURT:  Mr. Smith, good afternoon.
18              MR. MULLER:  Arthur Muller, your Honor.
19              THE COURT:  Mr. Muller, good afternoon to you.
20              We are here on defendants' contemplated motion.
21              Mr. Muller, are you on the docket sheet?
22              MR. MULLER:  Yes, it was filed today.
23              It's docket No. 95.
24              THE COURT:  I print these out the Friday before, so
25    that accounts for it.
```

H2dnorlc

1          OK.  So we are here on defendants' contemplated motion

2     to dismiss or to compel arbitration and then dismiss based on a

3     collective bargaining agreement that was negotiated and

4     executed after the plaintiffs had ceased to be employed by the

5     defendants.  Correct?

6          There's no dispute on those facts, right?

7          MR. SMITH:  I think that's true, yes.

8          THE COURT:  Then the question is whether or not the

9     plaintiffs would be bound by this later negotiated and executed

10    document.

11         So, I haven't found anything exactly on point.  I

12    think the case cited by defendants is not really on point, that

13    Judge Forrest opinion.  I mean, unless I'm missing something,

14    it seems to me that those are folks who are still employees,

15    those plaintiffs, but there was a modification to a collective

16    bargaining agreement or a modification to an agreement that

17    covered previously accrued claims, but they were still

18    employed, is that fair?

19         MR. SMITH:  So the complaint -- and I cited it in my

20    reply letter -- the complaint is for the present and former

21    employees in the *Lai Chan* case, and my understanding --

22         THE COURT:  There were no former employees among the

23    named plaintiffs, right?

24         I don't think it was a collective action, I don't

25    think.

H2dnorlc

1          MR. SMITH:  There were no former employees.  I am not

2     sure of that.

3          THE COURT:  It seems to me at least counterintuitive

4     that an employer and current employees through their union

5     would be able to negotiate away rights of former employees who

6     weren't involved in the process.

7          But stranger things I guess have happened.  I haven't

8     found any precedent that is right on point for this.  Is there

9     any reason to believe that the plaintiffs here -- are they

10    still members of the union?  Do we know?

11         MR. SMITH:  If they are former employees -- I don't

12    know.  I don't know.  I could find that out.  I doubt it.

13         THE COURT:  I doubt it, too.  But I can imagine if

14    that were the case maybe there is an argument that the

15    collective bargaining unit that is engaging in the negotiations

16    is binding them as well as current employees.  But it does seem

17    a little counterintuitive to think that employees who have

18    already commenced a suit would now have to pull the plug on

19    their suit because actors in 2016 or later have now negotiated

20    away their right to proceed in court.

21         You seem to think strongly that they are, in fact,

22    subject to this kind of resolution.  Maybe I am missing it,

23    Mr. Smith, so tell me.

24         I mean, you have Judge Forrest's case in the -- I am

25    not sure if I'm pronouncing it right the *Lai Chan v. Chinese*

H2dnorlc

*American Planning Council Home Attendant Program, Inc.* case.
That strikes me as a little different than the facts here.  So
go ahead.

           MR. SMITH:  Yes.

           So I don't think the Court has to even reach that
issue at this juncture.  I think that as a federal court
sitting and interpreting whether or not a matter should be
compelled to arbitration, I think the case law, the
*Cogeneration* case the *Arrigo* Second Circuit case all say,
absent a temporal limitation in the arbitration clause, where
the Court can say with positive assurance that the matters are
not susceptible --

           THE COURT:  I'm sorry to interrupt you, but it seems
to me this is all based on consent.  If the parties have
consented to arbitrate, then, by God, they are going to have to
arbitrate.  That is just the way it goes.

           If the plaintiffs here were not involved in the
collective bargaining action that resulted in the post facto
arbitration provision, how have they consented?

           MR. SMITH:  It is interesting.  In the *Lai Chan* case
and also in the case cited in *Lai Chan*, *Duraku v. Tishman
Speyer Properties, Inc.,* 714 F.Supp.2d 470, you have
individuals who have actually filed litigation.  The
presumption is they are not consenting to arbitration and
they're pursuing their supposed legal remedy in court.

H2dnorlc

1          Yet, despite the fact that they have actually filed

2    for litigation, the Court -- and in the *Duraku* case the SEIU

3    amended the collective bargaining agreement to include -- in

4    that case it was a different type of federal law.  It was a

5    discrimination case, but amended it to include that as part of

6    the duty to arbitrate.  The Court said no, even though you have

7    actually filed a litigation, which probably could be construed

8    to be the something where somebody has not consented to

9    arbitration, if they had consented, they would have filed a

10   grievance, you still have to go to arbitration because we can't

11   say with positive assurance that the clause that's been

12   negotiated here by the SEIU -- and they are talking about the

13   clause that was negotiated after the parties in *Duraku* filed

14   for litigation, that that clause is not susceptible to

15   interpretation of a recovery of wages claims.

16          THE COURT:  Again, I don't think you are addressing

17   the consent point.

18          How did the former employees consent to a provision

19   that was negotiated after they ceased to be employees?

20          MR. SMITH:  I don't think there is any dispute that

21   the employees at all relevant times were members of this union

22   when they worked for Liberty, and that there was a collective

23   bargaining agreement between the parties that contained a broad

24   arbitration clause.

25          THE COURT:  We will get to that in a minute.

H2dnor1c

1          It seems to me there are a couple of different

2     agreements, and I don't have them all.  I only have I guess

3     your characterization of the most recent one and then an

4     attachment, and then another that was in effect I guess between

5     2015 and 2016 I think.

6          Is that right?

7          MR. SMITH:  Well, it's my understanding that at all

8     relevant times there's been a collective bargaining agreement

9     in place.

10          THE COURT:  But I don't have the one that was in place

11     at the time of the alleged violations I don't think.  But, in

12     any event, I think the real crucial issue is what is it that

13     would allow a union to negotiate away the rights of people who

14     are no longer in the union?

15          MR. SMITH:  I think the fact that they were the

16     exclusive bargaining representative under Section 9 of the

17     National Labor Relations Act at the time that these individuals

18     worked.  I think that contractual rights, particularly rights

19     that are collectively bargained, are not normally vested.  The

20     same party that negotiated them in the first place can

21     negotiate them retroactively to be changed.

22          So, for instance, in the *Luden's* case that I cited to

23     the Court in my reply letter, the court there forced the

24     parties to arbitrate an issue of retroactive wages.  Unions do

25     things retroactively for employees all the time.  They may

H2dnorlc

1      provide for a retroactive wage increase.

2              I don't think in that context even former employees

3      won't be able to say, you know, I should have gotten more than

4      what the union negotiated for me in terms of --

5              THE COURT:  You think they could negotiate a

6      retroactive wage decrease?

7              MR. SMITH:  I don't have case law in front of me to

8      say that, but I think they could -- to the extent that the

9      person who already earned the wages, I don't think they would

10     be able to do that, but I think in terms of their venue, their

11     choice of law or the venue, whether they go to arbitration

12     versus they litigate the claims, I certainly think that they

13     can do that.

14             At the time that these employees worked for Liberty,

15     they had the union as their representative.  They agreed that

16     the union could negotiate all the mandatory subjects in

17     bargaining, which include an arbitration clause.

18             The union in fact did negotiate a broad arbitration

19     clause for them.  I think that the union as a party to the

20     agreement certainly has the right to negotiate something which

21     may or may not retroactive effect.

22             THE COURT:  What do you mean may or may not have

23     retroactive effect?

24             MR. SMITH:  I think the issue of what the

25     interpretation of that clause and the rest of the collective

H2dnor1c

1    bargaining agreement is, is for the arbitrator.  I think since

2    there is no temporal limitation in the arbitration clause that

3    was negotiated in December of 2016 and the court can't say with

4    positive assurance that these people aren't covered by it, that

5    they should at least in the first instance refer to the

6    arbitrator to decide that issue.  And the former employees

7    wouldn't be left without a remedy.

8            Obviously if an arbitrator makes a ruling and somehow

9    engages in a manifest disregard of law, there is a legal remedy

10   for that, because there is a strong presumption of

11   arbitrability, and because the Second Circuit in the

12   *Cogeneration* case that I cited states that any matters that --

13   anything that touches matters covered by the agreement must be

14   arbitrated.  The "touches matters" is from the *Cogeneration*

15   case -- that the Court should find that this is susceptible to

16   an interpretation that applies to the former employees and

17   should in the first instance order the whole dispute to

18   arbitration and perhaps review whatever the arbitrator decides

19   later on.

20           THE COURT:  Except that generally the Court's first

21   inquiry is to whether or not there is an enforceable -- I guess

22   there is an arbitration clause between the parties, right?  So

23   there's no dispute that the plaintiffs in this case didn't

24   negotiate anything regarding an arbitration clause, right?

25           MR. SMITH:  I think when the Court says between the

H2dnorlc

1    parties --

2              THE COURT:  I've got named plaintiffs:  Mr. Orlando,

3    Mr. Menna, Acevedo, Powell, Persad.  Those are the named

4    plaintiffs at this point.  None of them -- it's not a situation

5    where they signed an arbitration clause or an arbitration

6    agreement, right?

7              MR. SMITH:  No.  But here between the parties would be

8    the employer and the union.

9              THE COURT:  Well, I guess that's the point.  But I

10   think the consent has to be with these plaintiffs, right?

11             You are saying that, well, these plaintiffs are

12   represented by the union, and so they are bound by the union.

13   I am just not sure whether that is true after they have ceased

14   to be in the union.

15             I haven't found much in the way of case law on this,

16   but I think the analogy would be if the union negotiated a wage

17   decrease, that back pay will now be reduced 50 percent in

18   exchange for some future benefits, would these plaintiffs be

19   bound by that?

20             MR. SMITH:  I never like hypotheticals, your Honor.  I

21   would say, since we are talking specifically about arbitration,

22   and because there is a strong presumption of arbitrability, I

23   think the Steelworkers' trilogy and the *Cogeneration* case --

24             THE COURT:  I don't think there is a strong

25   presumption of arbitrability no matter what.  The first inquiry

H2dnorlc

1    is whether or not there is an agreement, whether the folks have

2    entered into an agreement, right?

3              MR. SMITH:  When you say the folks --

4              THE COURT:  The parties.

5         I'm dealing with the parties here.  I am not a labor

6    negotiator.  This is a case between plaintiffs and the

7    defendants.

8         You are saying that the plaintiffs have agreed to

9    arbitrate, and their response is, We didn't agree to anything.

10   We ceased to be employed by these guys, and then we brought

11   suit.  And now, after suit was brought, the union has

12   negotiated away our ability to prosecute our case.

13             MR. SMITH:  This isn't a case like the case that is

14   before you, your Honor, the *Daly v. Citigroup* case, where

15   you've got individuals bound by FINRA.  This is more akin to an

16   entity who has, through labor law, delegated the whole

17   responsibility to bargain on their behalf to an exclusive

18   bargaining representative.

19             THE COURT:  I agree with you, but I haven't seen

20   anything to suggest that that delegation continues even after

21   they have ceased to work there.

22             MR. SMITH:  I think the *Arrigo* case, the Second

23   Circuit case is on point in that, your Honor, in terms of that

24   is a Fair Labor Standards Act case where the Second Circuit

25   held arbitration.

H2dnorlc

1      In the *Lai Chan* case the Court cites *Arrigo*.  I am

2  just reading right now from the *Lai Chan* case:  "Plaintiffs

3  seek to avoid this mandatory arbitration clause by arguing that

4  the agreement to arbitrate embodied in the 2015 MOA cannot

5  apply retroactively to claims that may have accrued prior to

6  the execution of the 2015 MOA.  This argument is meritless.

7  The Second Circuit has indicated that, in the absence of a

8  provision placing a temporal limitation on arbitrability, an

9  arbitration provision may cover claims that accrued prior to

10  the execution of the agreement to arbitrate."

11      THE COURT:  I guess there's no question that it's

12  still the same plaintiffs.  Where the plaintiffs have been

13  employed and continued to be employed at the time of the

14  amendment, that's sort of different than where somebody ceases

15  to be employed by the union, I mean employed and therefore not

16  subject to the union.  If they are not members of the union,

17  how is the union representing them at this point?

18      MR. SMITH:  I don't know if they are members or not.

19  But assuming arguendo they are not, I think, just like in *Lai*

20  *Chan*, where there were former employees, the Court referred the

21  entire matter to arbitration in the first instance.  So those

22  former employees in *Lai Chan* presumably were not represented by

23  any labor organization, and yet *Lai Chan* found, because the

24  presumption of arbitrability is so strong and because the Court

25  can't state with positive assurance that the matter is not

H2dnor1c

1    susceptible to arbitration, that they would err on the side of

2    at least referring it to the arbitrator in the first instance

3    to let the arbitrator decide, does this cover current

4    employees, does this cover former employees, what is the scope

5    of the collective bargaining agreement.  I think the scope of

6    the agreement has certainly -- that is not a gateway to kind of

7    an issue for the Court to decide in the first instance.

8          THE COURT:  Why do you say that?

9          I mean, this is the Second Circuit quoted by Judge

10   Forrest in the *Lai Chan* case:  "To the extent there is doubt

11   about the scope of arbitral issues, the Court must resolve the

12   doubt in favor of arbitration.  But while a gateway dispute

13   about whether the parties are bound to a given arbitration

14   clause raises a question of arbitrability for a Court to

15   decide, it is the role of the arbitrator rather than this Court

16   to resolve issues of contract interpretation in arbitration

17   procedures in the first instance."

18         This strikes me as the gateway question for sure.

19   This is whether or not these plaintiffs are bound by the

20   arbitration clause.

21         MR. SMITH:  I respectfully say no.  I don't think it's

22   whether these entities -- I think once the Court establishes

23   that the union and the employer have agreed to arbitrate these

24   claims, and that the claims, at least the arbitration clause is

25   open to interpretation, that the scope of the arbitration

H2dnor1c

1    clause encompasses wage claims.

2         Here I don't think you can reach any other conclusion,

3    because the instant memorandum of understanding -- the

4    memorandum of agreement says any claim, so it's not limited in

5    time.

6         Then I think the Court in the first instance should be

7    satisfied that there is an agreement to arbitrate, refer it to

8    the arbitrator to interpret the contract and to interpret its

9    retroactivity.

10        THE COURT:  All right.  Let me hear from --

11   Ms. Schulman, are you carrying the ball for your team?

12        MS. SCHULMAN:  Yes, your Honor.

13        THE COURT:  I don't think this is a crazy argument.  I

14   just haven't found a lot of authority one way or the other for

15   it.  It seems counterintuitive to me.

16        Is there some authority that suggests that in fact

17   Mr. Smith is wrong?

18        MS. SCHULMAN:  There is no authority addressing this

19   precise issue.

20        THE COURT:  I'm surprised not.  You would concede at

21   this point that any member of the potential collective or class

22   who is still employed by Liberty Ashes and represented by the

23   union can't be proceeding in this action?

24        MS. SCHULMAN:  Most likely, unless we can find some

25   other basis to invalidate the arbitration clause.

H2dnorlc

1        THE COURT:  OK.  So we are only talking then about the

2   named plaintiffs who you tell me are all former employees?

3        MS. SCHULMAN:  Right.

4        THE COURT:  And anybody else I guess who is a former

5   employee who ceased working for defendants prior to the

6   amendment?

7        MS. SCHULMAN:  Right.

8        Although right now we really only have to talk about

9   the five plaintiffs, since it's not been certified as a --

10       THE COURT:  I get that.  Depending on how we resolve

11  this one, we might be in that world pretty quickly.

12       MS. SCHULMAN:  Right.

13       THE COURT:  So if the union had negotiated back pay

14  increases, wouldn't these former employees be bound by that

15  negotiation?

16       MS. SCHULMAN:  Meaning that they might benefit from

17  that?

18       THE COURT:  They might benefit, but they would also be

19  limited to it.

20       MS. SCHULMAN:  The difference between that and what we

21  have here is when you are talking about back pay potentially

22  going to former employees or being excluded from back pay, you

23  are talking about an obligation that the employer has to the

24  employees.

25       What we have here is defendants, and the union, which

H2dnorlc

1    does not represent our clients at this time, trying to impose a

2    duty on them, something that the plaintiffs have to do, not an

3    obligation of the employer to them.  It is just sort of

4    baffling how, when we are talking about a matter of contract, a

5    union that does not represent these people can bind them to

6    take some particular action.

7            They don't have representative capacity at this point

8    because --

9            THE COURT:  What is the authority for saying that,

10   that they don't have a representative capacity?

11           MS. SCHULMAN:  First it's pretty well settled that a

12   union does not owe a duty of fair representation to former

13   employees.  That's because they are not part of the bargaining

14   unit.  The union is not the exclusive representative of former

15   employees.

16           THE COURT:  You are citing authority?  Are there

17   cases --

18           MS. SCHULMAN:  There are cases.  I believe I cited an

19   Eighth Circuit case in my letter *McCormick v. Aircraft*

20   *Mechanics Fraternal Organization*.  But it comes up a lot also

21   in the pension context.  That's probably the most common area,

22   where the cases deal with former employees, that the union does

23   not owe the former employees that duty.

24           I would just like to point out with the -- in terms of

25   the different CBAs that are at issue here, defendants provided

H2dnor1c

1    a CBA with their reply letter with an effective date from

2    January 1, 2012 to December 31, 2015.  That is a CBA that

3    covers at least part of the time period that the plaintiffs

4    worked for defendants.  But the memorandum of agreement, which

5    is dated December 28 of last year, says explicitly that it

6    amends a collective bargaining agreement effective from January

7    1, 2016 to December 31, 2018.  That is a whole different CBA,

8    our clients never worked under it.  So the MOA is amending a

9    CBA that itself postdates my client's employment.

10            THE COURT:  I get that.  I want to come to that in a

11   minute.

12            Right now I'm just trying to get my head around the

13   notion that the union represents former employees for some

14   purposes but not other purposes.

15            MS. SCHULMAN:  As I understand it, they can -- I don't

16   want to -- it's murky.  But I have seen no case that permits a

17   union to impose an obligation on former employees.  I think the

18   idea is that, after an employee has left, a union is

19   negotiating a whole constellation of financial terms.  That

20   could include back pay, that could include pension payments.

21   So those things may necessarily impact former employees, but

22   they are not binding those former employees to anything

23   themselves.

24            THE COURT:  Other than this Eighth Circuit case,

25   *McCormick*, is there any other authority?  Either cases or

H2dnorlc

1    opinions from the Department of Labor anything like that?

2              MS. SCHULMAN:  I am sure I could provide others that

3    stand for the proposition that the union is not the

4    representative of the former employees.  I think I could do

5    that.

6              THE COURT:  OK.  I think that's worth doing.  I don't

7    think there is a tremendous amount out there, but this is

8    pretty central to resolving the issue.

9              I am hopeful that it has come up, or at least

10   something analogous has come up in other cases or in labor

11   department opinions.

12             Are you aware of anything else, Mr. Smith?

13             MR. SMITH:  I can cite the case law, but unions all

14   the time represent employees who have been wrongfully

15   terminated, so their employment ceased at that point.  I think

16   there is a case, *Noldi Brothers* (phonetic) where they were

17   representing individuals with respect to severance pay where

18   the entire collective bargaining agreement had expired and the

19   employer was making the argument that -- there is a case called

20   *Advanced Lightweight Concrete* which says that postcontract

21   expiration disputes are solely within the jurisdiction of the

22   National Labor Relations Board.  So the union very often, even

23   after the contract has expired, can represent employees in the

24   collective --

25             THE COURT:  The fact that it's expired doesn't mean

H2dnorlc

1    that the union is not the collective bargaining representative

2    of everybody who is a worker or would-be worker.

3            I think the issue is, for former workers, can the

4    union negotiate away their rights?

5            So could the union say -- I mean, this is the example

6    I used before -- but in negotiating its next collective

7    bargaining agreement say, And also any overtime that is owed

8    for the past five years for former employees, there's no longer

9    a liability for that.

10           They couldn't do that, right?

11           MR. SMITH:  I think that the fact that they were

12   former employees is kind of a red herring, because I think we

13   can concede that any wage claim that these individuals might

14   have accrued at the time that they were represented by the

15   union.

16           So it's just a question of the union -- A, do they

17   have to process any wage grievance through the collective

18   bargaining/arbitration process, or are they allowed to,

19   notwithstanding that there is a collective bargaining agreement

20   that the parties have specifically agreed to a broad

21   arbitration clause clearly covering causes of action in this

22   litigation and without any temporal limitation, whether,

23   notwithstanding all of that, the employees can stand up on

24   their own, and notwithstanding Section 9 of the National Labor

25   Relations Act, stand up on their own and say, well, I am not

H2dnor1c

1    satisfied with the way the union is handling this, so I'm just

2    going to file my own claim.

3              That would defeat the whole purpose of arbitration in

4    the collective bargaining context.  From the Steelworkers

5    trilogy on there was always maintained a piece of labor

6    relations that you have this strong presumption.

7              I think it is an easier job for the Court in terms of

8    you don't have to get into all of that.  You can refer it to

9    the arbitrator in the first instance.  I think the Second

10   Circuit mandates that.  Then, whatever the arbitrator -- if the

11   arbitrator acts *ultra vires* or if there is a manifest disregard

12   of the law in his award, there's obviously judicial relief in

13   that instance.

14             But to just say, well, employees can step forward

15   notwithstanding what the parties to the arbitration agreement

16   have agreed to, particularly where, as here, the entity at the

17   time of the wage claim accrued was their exclusive collective

18   bargaining representative, I don't think that's consonant with

19   the law.

20             THE COURT:  Isn't there a concern that the collective

21   bargaining unit will negotiate away the rights of former

22   members to benefit current members?

23             MR. SMITH:  The collective bargaining representative

24   negotiates on behalf of the bargaining unit.  That unit is a

25   dynamic entity.  It is not a static entity.  So, over the

H2dnorlc

1    course of time, people may come in and out, but the union is

2    constantly negotiating for that bargaining unit.  People with

3    common interest, a commonality of interest agree to this

4    representation process, and Section 9 of NLRA provides for all

5    that.

6             Yes, I think they do -- at the time that they are

7    negotiating -- they are not just -- they don't have blinders on

8    for negotiation.  It is just for that particular moment in time

9    they are negotiating for issues that may have arisen in the

10   past, and they're also negotiating prospectively, because

11   contracts sort of -- they're negotiating for people who haven't

12   even become employees yet with the company.

13            THE COURT:  Here's a different hypothetical.

14            Then can a union basically negotiate away the pension

15   rights of former employees to benefit current employees?

16            MR. SMITH:  That is a little bit different.

17            THE COURT:  I think there are different statutes and

18   regs that cover a lot of these things.

19            MR. SMITH:  You have a bit of a conflict I think

20   between ERISA and -- particularly, the anti-alienation

21   provision of ERISA, Section 411(d)(6), which says that you

22   can't cut back on an employee's benefits.  So if I was somebody

23   with a pension -- although it does happen I believe in the

24   bankruptcy context where you have Section 1113 proceedings

25   where these rights are negotiated away.  I think the *Delta*

H2dnorlc

1    *Pilots* case comes to mind.

2              THE COURT:  That's through bankruptcy, right?

3              That is a different animal.

4              MR. SMITH:  I am just saying the union has the power

5    to negotiate -- I think your question was, Does the union have

6    the power to negotiate that, if I had a vested -- and, yes, I

7    think --

8              THE COURT:  Again, only if a court approves it.

9              MR. SMITH:  I think if your pension wasn't vested yet,

10   yes, I think the union may have the ability to negotiate that

11   away.

12             Once you vested in the pension, my understanding is

13   that 411(d)(6) and the anti-alienation provisions of ERISA

14   don't allow vesting rights to be undone.  But there you've got

15   a conflict of federal laws that really doesn't exist here.

16   This is pretty straightforward actually.

17             THE COURT:  I am not sure how straightforward this is.

18   I think it is an interesting issue, but I haven't seen a lot of

19   authority that addresses this specific factual situation.

20             MR. DUSENBERRY:  Your Honor --

21             MR. SMITH:  It is dynamic.  It's in flux now.  We've

22   Judge Gorsuch on the Supreme Court.  It was supposed to be

23   handled in this term.  It is going to be moved to the next

24   term.  I am sure we will hear more from the appellate courts

25   and the Supreme Court on this whole issue.

H2dnorlc

1          THE COURT:  I think some of the facts are different on

2     those other issues.

3          Did you want to say something Mr. Dusenberry.

4          MR. DUSENBERRY:  I think it is a straightforward issue

5     in the plaintiff's favor, your Honor.  He's listed a bunch of

6     cases that he cited that talk about the principle of

7     retroactivity that have nothing to with this case.  The

8     collective bargaining agreement that the plaintiffs were under

9     is a different collective bargaining agreement than the one

10    that was issue here.  That was modified.

11         THE COURT:  No question about that.

12         What prevents the collective bargaining unit, which is

13    the union, from negotiating on behalf of current and former

14    members with respect to things like arbitration?

15         MR. DUSENBERRY:  With respect to the former members

16    who were under the previous CBA, that CBA no longer exists, so

17    the union doesn't have authority to negotiate.

18         THE COURT:  Why do you say that?

19         Why do they not have the authority to do that?

20         MR. DUSENBERRY:  Because there is no CBA that is in

21    effect for them anymore.  That CBA has expired.  There is a new

22    CBA.

23         THE COURT:  Right.  I guess that's the point.

24         The new CBA basically says that it replaces and

25    supersedes all prior ones, right?

H2dnorlc

1          MR. DUSENBERRY:  Yeah.  And the MOA, which contains

2     the arbitration provision at issue here, modifies the new CBA,

3     not the old one that the plaintiffs here were under.

4          THE COURT:  Again, that's a different factual question

5     that I was going to save for a minute.  But I'm asking more in

6     the straight legal question, which is, is there anything that

7     would prevent -- so, imagine a hypothetical where we've got the

8     CBA that involves your clients.  They get terminated or quit,

9     and then the collective bargaining agreement that they lived

10    under has been renegotiated or amended after the fact by the

11    union.

12         What is it that you would rely on to say they can't do

13    that and bind the former employees?

14         MR. DUSENBERRY:  Well, that they are not in the

15    bargaining unit after they leave the CBA.  I think that the

16    terms of the CBA may affect that question.

17         THE COURT:  Is there anything in the terms of the CBA

18    that only binds people who are currently employed and members

19    of the union?

20         MR. DUSENBERRY:  Having looked at the MOA, I think

21    that the MOA which has the arbitration provision applies only

22    to current employees.

23         MS. SCHULMAN:  Your Honor, if I could just --

24         THE COURT:  You are talking about what is attached to

25    the February 6 letter?

H2dnorlc

1            MR. DUSENBERRY:  I believe so, your Honor.

2            MS. SCHULMAN:  The CBA that is attached to the

3   February 6 letter is the CBA that covered the period of our

4   clients' employment, and it says, "This agreement shall apply

5   to all present and future employees covered by this agreement

6   and employed by the company during the term of" --

7            THE COURT:  Where are you referring to?

8            MS. SCHULMAN:  It is on page 3.

9            THE COURT:  Right.

10           MS. SCHULMAN:  It is right above union security.

11           THE COURT:  "All present and future employees covered

12   by this agreement."

13           MS. SCHULMAN:  Right.

14           So we don't have the 2016 CBA, which is the one that

15   was actually modified by the MOA, but presumably it has that

16   same language in it.

17           THE COURT:  So what is the date on this one?

18           MS. SCHULMAN:  It is effective --

19           MR. DUSENBERRY:  December 1, '16.

20           MS. SCHULMAN:  No.

21           THE COURT:  2012?

22           MS. SCHULMAN:  Yes, 2012.

23           It was signed January 1, 2012.

24           THE COURT:  OK.  Yes, that's the one I've got.

25           I don't have the intervening one.

H2dnorlc

1              I do have then the MOA, right?

2              MS. SCHULMAN:  Right.

3              MR. DUSENBERRY:  Correct.

4              THE COURT:  I guess it would be good to have it.

5              Does anybody have it with them?

6              MR. DUSENBERRY:  Do you have the --

7              THE COURT:  Mr. Smith?

8              MR. SMITH:  Which one are we looking at?  The 2016-19?

9              THE COURT:  I have the 2012 one.  I don't know when it

10    expires.  2015 or something.

11             MS. SCHULMAN:  Yes.  December 31, '15.

12             THE COURT:  Then there's 2015 to 2016, right?

13             MS. SCHULMAN:  No, the CBA with the February 6 letter

14    expires December 31, 2015.  Then according to the MOA, there's

15    another CBA --

16             THE COURT:  Right.

17             MS. SCHULMAN:  -- effective January 1, 2016.

18             THE COURT:  That's the one we are looking for.

19             MS. SCHULMAN:  Right.

20             MR. DUSENBERRY:  Right.

21             MR. SMITH:  I am not sure, your Honor.  I can look

22    into that.  If you want, I can send a letter.

23             THE COURT:  I think it's relevant.  I am not sure if

24    it's dispositive, but I think it's relevant.

25             MR. SMITH:  If you want, I'll send another --

H2dnorlc

1          THE COURT:  I am not going to tell you you can't make

2     the motion.

3          Do you think you want to make the motion beyond what

4     you have already submitted, or do you want me to just deem this

5     to be the motion?

6          MR. SMITH:  I think we want a briefing schedule, your

7     Honor.

8          THE COURT:  OK.  I think we've taken this about as far

9     as I can go.  I'm hungry for more authority.  I haven't seen

10    much.

11         When do you think you could make the motion,

12    Mr. Smith?

13         MR. SMITH:  Would four weeks be too long for the

14    Court?

15         THE COURT:  How long?

16         MR. SMITH:  Would four weeks be too long for the

17    Court's docket?

18         THE COURT:  It is not too long for me.  Of course, we

19    do have a pending motion already.  I guess this arbitrability

20    question kind of trumps that, right?

21         If there is an enforceable arbitration clause, then

22    the other motion kind of melts away, right?

23         So I think I have to resolve this one first, and only

24    if I deny this motion do we then get to the other one.

25         Does anybody disagree with that?

H2dnorlc

1          MR. SMITH:  No, your Honor.

2          THE COURT:  Given the FAA, given the presumptions in

3    favor of arbitration, I think if there is an enforceable

4    arbitration provision, then that will require me to send this

5    to the arbitrator without resolving the motion that's currently

6    pending.

7          MS. SCHULMAN:  We would like a shorter briefing

8    schedule than four weeks in light of the pending summary

9    judgment motion.

10         MR. DUSENBERRY:  They have waited five months with a

11   penning summary judgment motion, your Honor.  Now they are

12   making a motion for arbitration.  Our plaintiffs --

13         THE COURT:  In fairness, when did this agreement get

14   written, this amendment?

15         MR. DUSENBERRY:  December of '16.

16         THE COURT:  Yes.  So they haven't waited five months.

17   As soon as it happened, they pretty shortly after that --

18         MR. DUSENBERRY:  They did it a month later.  You know,

19   so, but our plaintiffs have already been waiting for a

20   significant time for a decision, and, you know, I guess I would

21   just say we bifurcated the proceedings in the beginning to

22   speed resolution of the case.  Now we're facing yet another

23   delay here.  And, you know, so I would just ask the Court,

24   respectfully ask that the Court --

25         THE COURT:  A shorter schedule is what you are saying?

H2dnorlc

1          MR. DUSENBERRY:  Yes.

2          MR. SMITH:  We have a tolling agreement in place.

3          THE COURT:  Is there a concern that the defendants

4     here are going to go belly up, or is there some concern as to

5     whether they will be viable?

6          MS. SCHULMAN:  As far as I know, there is not a

7     concern about that, but we would just like to move the case

8     along.

9          This issue has been pretty extensively briefed already

10    in the letters.  It doesn't seem like there should be too much

11    more to do.  I don't see why four weeks would be necessary.

12         THE COURT:  What is the reason for four weeks?

13         Do you have some other obligations?

14         MR. SMITH:  I asked for some time.  I do have a trial

15    starting on March 7 in Westchester Supreme.  I shouldn't say

16    it's actually starting, I'm scheduled.  It could start on that

17    day.  Depending on how things go, I could be calling a jury

18    that day.  If I have to, whatever the Court finds --

19         THE COURT:  I'm really looking to see if there is more

20    authority that hasn't been cited, if there's additional

21    authority.  The issues are pretty well framed at this point.

22         I don't need a lot of sort of fancy language that just

23    says what was already said pretty articulately in the letters.

24    I just need to know whether there's some Second Circuit

25    authority, some out-of-circuit authority, some Department of

H2dnorlc

1    Labor authority that suggests that the collective bargaining

2    unit has the power to bind former employees to arbitrate, even

3    though their employment predated the amendment that added an

4    arbitration clause.  I think that's pretty discrete.

5              Let's say three weeks.  Three weeks from today is

6    what?  Today is the 13th.  March 6.

7              How long to respond?

8              MS. SCHULMAN:  I would normally ask for just the same

9    amount of time, but I do have an arbitration the week of the

10   20th, so if we could get maybe three weeks and two days or

11   something like that.

12             THE COURT:  How much?

13             MS. SCHULMAN:  Maybe until the 29th or the 30th

14   instead of until the 27th?

15             THE COURT:  If we are going to accommodate your

16   schedule, I think we ought to accommodate Mr. Smith's as well.

17             MS. SCHULMAN:  We could stick with the 27th I guess.

18             MR. SMITH:  I have no objection to giving them extra

19   time, Judge, if that makes it easier for them.

20             THE COURT:  What were you asking for?

21             MS. SCHULMAN:  The 29th.  It's two extra days.

22             THE COURT: All right.  The 29th is fine.

23             Then a reply.  I'll give you a week, Mr. Smith, if you

24   want it, but don't feel you have to.

25             MR. SMITH:  I think I need two weeks, Judge.

H2dnorlc

1            THE COURT:  What's that?

2            MR. SMITH:  I probably need two weeks.  There are

3     going to be two opposition papers.

4            THE COURT:  Though usually I would give a week to ten

5     days, I don't generally give two weeks.  Again, I think this is

6     pretty well briefed.  I'm tempted to just say anyone who wants

7     to send me supplemental authority can do it in three weeks and

8     I'll just take what you get.  I am not sure I need more than

9     that.

10           MS. SCHULMAN:  That would be fine with us.

11           MR. DUSENBERRY:  That would be amenable to plaintiffs.

12           MR. SMITH:  Ten days is fine.

13           THE COURT:  Let's stick with that.

14           MR. SMITH:  Judge, can we address pages limitations at

15     this point?  I don't know they are going to cross-move.

16           THE COURT:  Cross-move for what?  I assume they are

17     opposing yours.  I don't think there will be a cross-motion.

18           MR. SMITH:  There's none.  You're right.  I apologize.

19           THE COURT:  So, page limitations, I think 20 pages

20     would be plenty at this point.  Again, I'm not just looking for

21     you to send me what you have already sent me and make it double

22     spaced.

23            I just need you to tell me what other authority there

24     is out there.  Be discrete.  You have other things to do.  I

25     get it.  I think your papers did a good job of teeing up the

H2dnorlc

1    issue, just not resolving it to my satisfaction.  That's really

2    the issue.  OK?

3            MR. SMITH:  Thank you.

4            THE COURT:  All right.

5        I guess the question is what do I do in the meantime

6    with the pending motion.  So I am going to stay that or deny it

7    without prejudice to renewal depending on how this one goes.  I

8    have another case with the same issue.  Is garbage good?  Does

9    it have value?

10       All right.  I will decide on that one.  I am not going

11   to resolve that today.

12           Is there anything else we should chat about?

13           MS. SCHULMAN:  No, your Honor.

14           THE COURT:  No.  OK.

15           MR. SMITH:  I don't think the pending motion should be

16   denied with leave to renew.  I think, if anything, it should

17   just be stayed.  I am just putting my position on the --

18   obviously it is up to you, Judge.

19           THE COURT:  Yes.  Otherwise, it's on my six-month

20   list, and since I am now being told to stop that one and do

21   another one, I don't see a downside to denying it.  Then you

22   can just renew it, and it will be right back where it was and

23   then I will resolve it, because I'm pretty close to resolving

24   it.

25           MR. SMITH:  Without having to file any briefs or

H2dnorlc

1    anything?

2              THE COURT:  Yes.

3              MR. SMITH:  OK.

4              THE COURT:  OK.  Ms. Schulman?

5              MS. SCHULMAN:  I have nothing else.

6              THE COURT:  It is an interesting issue I think.  But

7    it may not be the best use of everybody's time.  I am not sure.

8              Let me thank the court reporter, as always.  If

9    anybody needs a copy of the transcript, you can take it up with

10   him either now or later through the website.

11             So, thanks.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25