# Exhibit "A"

# *TABLE OF CONTENTS*

| | | |
|---|---|---|
| *Article 1.* | **Union Security** -Indemnification | **Pages 3-4** |
| *Article 2.* | **General Conditions** Part(s) A.-E. | **Page 5** |
| *Article 3.* | **Picket Line** | **Page 5** |
| *Article 4.* | **Hours of Work** | **Page 5** |
| *Article 5.* | **Saturday Work – Sunday Work** | **Page 6** |
| *Article 6.* | **Shop Steward and Union Visitation** Part(s) A.-C., (C. #'s 1 & 2) | **Page 6** |
| *Article 7.* | **Seniority** | **Page 7** |
| *Article 8.* | **Grievance and Arbitration** | **Page 7** |
| *Article 9.* | **Wages** Part(s) A.-B. | **Page 8** |
| *Article 10.* | **Holidays** Part(s) A.-E. | **Page 8** |
| *Article 11.* | **Vacations** | **Page 9** |
| *Article 12.* | **Vacation Pay in Severance of Employment** | **Page 9** |
| *Article 13.* | **Better Working Conditions, Rates of Pay** | **Page 9** |
| *Article 14A.* | **Drug and Alcohol Policy** | **Page 9** |
| *Article 14.* | **Discrimination Against Union Members** Part(s) A.-B. | **Page 10** |

**LIBERTY ASHES INC.**

1

## TABLE OF CONTENTS
### (Continued)

| Article 15. | Employer Correspondence to the Union | Page 10 |
|---|---|---|
| Article 16. | Standards of Working Conditions | Page 10 |
| Article 17. | Discharge of Employees Part(s) A. | Page 10 |
| Article 18. | Delinquent in Payments | Page 11 |
| Article 19. | No Strike – No Lockout | Page 11 |
| Article 20. | Sick Leave | Page 11 |
| Article 21. | Death Provision | Page 11 |
| Article 22. | Leave of Absence | Page 11 |
| Article 23. | Successor Clause | Page 12 |
| Article 24. | National Labor Management Promotional Fund | Page 12 |
| Article 25. | Health and Welfare | Page 12 |
| Article 26. | Effective Date of Agreement | Page 13 |
| Article 27. | Agreements with Employers | Page 13 |
| Article 28. | Job Opportunities | Page 13 |
| Article 29. | Legal Minimums | Page 14 |
| Article 30. | Severability | Page 14 |
| Article 31. | Military Service | Page 14 |

THIS AGREEMENT BY AND BETWEEN LEAGUE OF INTERNATIONAL FEDERATED EMPLOYEES, HEREIN REFERRED TO AS THE "UNION" AND **LIBERTY ASHES INC.** HEREINAFTER REFERRED TO AS THE "EMPLOYER" OR "COMPANY".

## W I T N E S S E T H

THE COMPANY HEREBY AND HEREIN recognizes the Union as the authorized Collective Bargaining Agent for all drivers, helpers, shuttle drivers, Class A mechanics and welders excluding all office clerical, guards and supervisory employees employed at its:

### 95-33 150th STREET, JAMAICA, NY 11432

location in respect to wages, hours and all other Terms and Conditions of employment during the entire term of this agreement.

This agreement shall apply to all present and future employees covered by this Agreement and employed by the Company during the term of this agreement.

## 1.   **UNION SECURITY**

It shall be a condition of employment that all employees of the Employer covered by this agreement, who are Members of the Union in good standing on the effective date of this agreement or execution date, whichever is later, shall remain Members in good standing and those who are not Members on the effective date of this agreement, or execution date, whichever is later, shall on the thirtieth (30th) day following the effective date of this Agreement, or execution date, whichever is later, become and remain Members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this agreement and hired on or after the date of the signing of this Agreement shall on the thirtieth (30th ) day following the beginning of such employment become and remain members in good standing in the Union.  Membership as used herein shall mean only the obligation to pay periodic dues and initiation fees uniformly required or in the event that the employee objects to the payment of full dues and initiation fees, only the obligation to pay periodic dues and initiation fees related to representational costs.

All new employees shall have a 120 day probationary period.  This period can be extended when requested by management in writing and mutually agreed upon between union and management.

In the event of any change in the law during the term of this agreement, the Employer agrees that the Union will be entitled to receive the maximum Union Security that may be lawfully permissible.

3

No provision of this Article shall apply in any state to the extent that state law may prohibit it. If under applicable State Law additional requirements must be met, before any such provisions may become effective; such additional requirements must be first met.

If any provision of this Article is invalid under the law of any State wherein this agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be re-negotiated for the purpose of adequate replacements. If such negotiations shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

The Company agrees that, during the term of this Agreement and any extension thereof, it shall deduct from the earnings of those employees who have so authorized in writing a sum equal to the amount certified by the Financial Secretary of the Union as periodic union membership dues and initiation fees (where appropriate). The authorization shall be in the form required by applicable law.

The deduction shall be made in the first pay period in each month and shall be remitted, with the employee's name and social security number to the Union on or before the 15th day of the succeeding month. This remittance shall also include a list of new hires, dates of hire, terminations and dates of terminations and dues revocations, if any.

The Employer agrees to permit the Union or its representative(s) to audit all payroll records in order to verify the amount paid as wages to employees, deductions for dues and assessments and remittances to the various funds referred to in this agreement. Such audit to be conducted between the hours of 9 p.m. to 5 p.m., Monday through Friday, at the Employer's place to business. All costs of such audit shall be borne by the Union unless the discrepancy (ies) uncovered by the audit are of such an amount as to cause the audit time to be higher than normal. In such event, it will be submitted to arbitration in accordance with Article VIII of this agreement.

**Indemnification.**
The Union will hold harmless, defend and indemnify the Employer and its employees with respect to any claims, liabilities, costs and expenses (including Attorneys' fees) arising out of or connection with this Section or any action taken under it at the request of the Union, provides that the Union shall have the right to defend against all such claims and that no settlement thereof shall be made without the prior written agreement of the Union.

Provided, however, failure of the Employer to comply with the provisions of the Union Security Clause, or failure of the Employer to pay wages, fringe benefits or contributions for fringe benefits, as provided in this agreement, shall be cause for Strike or other Work Stoppage without resorting to the Grievance Procedure, provided the Union has notified the Employer of the cause for the pending action and no resolution is achieved.

4

## 2. GENERAL CONDITIONS

(a) No provisions hereof shall require the Employer to pyramid or pay more than one rate for work performed. Where the different overtime or premium rates may be applicable, the highest rate for the particular work shall be the rate paid. Where any individual employee's rate of pay at the date of this Agreement is higher than the existing rate the higher rate shall be applied.

(b) Employees employed on a weekly or monthly basis shall be paid at not less than the basic rate per hour.

(c) The Employer may, at its own expense, require new employees to submit within the first thirty (30) days of employment to a physical examination by a physician designated by the Employer, to determine whether the employee is physically qualified for employment.

(d) Employees reporting regularly shall be entitled to employment for work for which they have the necessary qualifications in order of their seniority with the Employer. Employees who resign or are discharged from the Employer's employment shall forfeit all claims to seniority previously established. No employee shall have a right of recall after a layoff of six (6) months or longer. In computing total length of service, leaves of absence authorized by the Employer and temporary transfers to positions not covered here by shall not affect their seniority.

(e) Every effort will be made to arrange for Employees to receive their wages during working hours at a location and at a time as convenient as possible to them.

## 3. PICKET LINE

It shall not be the duty of any employee nor shall any employee at any time be required to cross a Primary Picket Line. It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in Primary Labor dispute or refuses to go through or work behind any Primary Picket Line, including the Primary Picket Line at the Employer's places of business.

## 4. HOURS OF WORK

Forty (40) hours of work each week shall constitute the working week for all present and future employees in the employ of the Company. Each working day shall consist of eight (8) consecutive hours of work. Every employee shall receive at least one-half (1/2) hour off for lunch each workday as near the middle of the day as possible. Workweek shall be

5

from Monday to Sunday, inclusive. Any work done in excess of forty (40) hours shall be considered overtime work and said overtime shall be paid at the rate of time and a half. .

## 5. SATURDAY WORK – SUNDAY WORK

All hours worked on a Sunday shall be paid for at the rate of double time except for routes that work Sunday to Thursday. The sixth scheduled worked day shall be paid at double time the hourly rate, provided the forty (40) hours have been worked that week.

Any employee called in for work on a Saturday, Sunday or holiday shall be guaranteed four (4) hours pay. Excludes all work on Sunday for schedule routes that overlap to Monday am.

## 6. SHOP STEWARD AND UNION VISITATION

The Employer recognizes the right of the Union to designate Job Stewards and Alternates.

The authority of Job Stewards and Alternates so designated by the Union shall be limited to, and shall not exceed the following duties and activities:

**A.** The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement;

**B.** The collection of dues when authorized by appropriate Local Union action;

**C.** The transmission of such messages and information which shall originate with and be authorized by the Local Union or its Officers provided such messages and information:

1. Have been reduced to writing, or,

2. If not reduced to writing, are of routine nature and do not involve work stoppages, slow downs, refusal to handle goods, or any other interference with the Employer's business.

Job Stewards and Alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of Job Stewards and their Alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the Shop Steward has taken unauthorized strike action, slow down or work stoppage in violation of this Agreement.

6

The Employer agrees that any properly accredited Union official or representative shall have the right at all times to visit the plants operated by the Employer, for the purpose of interviewing employees and to see that the conditions of this contract are carried out.

## 7. SENIORITY

The principle of Classification Seniority shall prevail at all times. Whenever it becomes necessary for the Employer to reduce the number of employees in his employ, the employee last hired shall always be laid off first and when rehiring takes place, the employee last laid off shall be the first to be rehired.

Seniority for all employees shall be defined as the employee's length of continuous employment with the Employer.

**Dispute Procedure**
If a dispute arises concerning the interpretation or application of the foregoing provisions dealing with Seniority, then the, submitted subject matter of such dispute may be taken up by the aggrieved Party under the grievance and arbitration procedure as provided for herein.

## 8. GRIEVANCE AND ARBITRATION

Any dispute, difference, or a grievance within 60 days ( excluding any ERISA or National Labor Relation Board Laws) regarding the interpretation, application or claim of breach of the provisions of this Agreement shall be settled by conference with the duly authorized officials of the Union and representatives of the Company.

In the event that such dispute, difference or grievance shall not have been satisfactorily adjusted between the Employer and the Union, the grievance may be submitted to Arbitrator J.J. Pierson, if Mr. Pierson is unable to serve, Roger Maher is hereby designated as a back-up arbitrator, if Mr. Pierson or Mr. Maher are unable to serve, then the matter shall be submitted to the New York State Employment Relation Board for selection of Arbitrator in accordance with their usual practices, or that the parties may mutually agree on an alternative arbitrator. The decision of such designated Arbitrator shall be final and binding upon the Parties. The Parties further agree that there shall be no suspension of work when such dispute, and/or difference or grievance arises and while it is in the process of adjustment or Arbitration. The Parties agree that the expense of the Arbitrator shall be born equally between the two.

The Arbitrator shall decide cases in issue solely upon the provisions of this Agreement, and shall have no powers to add to, delete from, modify or alter the provisions of this Agreement.

Any employee except grievant who shall at the discretion of the Arbitrator be required to testify at or attend any hearings of Arbitration, Mediation or settlement of any questions of violations of this Agreement, shall not suffer any loss in wages by reason thereof.

Only the Union or the Employer shall have the right to request Arbitration.

## 9.    WAGES

During the term of this Agreement, the employees of the Employer shall be paid the minimum wages as set forth in Schedule "A" attached hereto.

> **A.** The parties hereto agree that if employees are forced to wait for work, all such waiting time shall be paid for at normal rate of pay.

> **B.** Wages in full shall be paid for by check each week on Company time in a pay envelope with the name of the Member or employee on it, social security number, rate of pay, number of hours worked, total pay, social security deduction, withholding tax and net pay.

## 10.    HOLIDAYS

The following shall be considered Holidays within the meaning of this Agreement, to wit:

| | |
|---|---|
| NEW YEAR'S DAY | MEMORIAL DAY |
| INDEPENDENCE DAY | LABOR DAY |
| THANKSGIVING DAY | EMPLOYEES BIRTHDAY |
| CHRISTMAS DAY | |

> **A.** Any employee is to be paid Holiday pay, eight (8) hours straight time, for a Holiday not worked. This shall apply if a Holiday falls on a Saturday.

> **B.** An employee choosing to work on any of the above holidays shall receive pay at the applicable rate stated in Article X, sub-paragraph C.

> **C.** Holiday Pay: Any work performed on any Holiday mentioned in this Agreement shall be paid at the rate of time and one-half (1 1/2) times for all hours worked, plus eight (8) hours at straight time for the Holiday pay.

> **D.** If an employee does not work on a Holiday, the employee shall receive a day's pay for not working the Holiday, at the straight time hourly rate. Employee must work the day before and after a holiday to be paid for the holiday.

> **E.** If any Holidays fall on a Sunday, it shall be observed as the first day of the following week.

8

## 11.   VACATIONS

Vacation schedules shall be scheduled throughout the year.  Management will arrange all vacation schedules on the employee's yearly anniversary date.  In the event of conflicting schedules, management reserves the right to decide.

All vacations shall be prorated with length of yearly service.

Three (3) days vacation with pay shall be given after six (6) months of employment.

Five (5) days vacation with pay shall be given after one (1) year of employment.

Ten (10) days vacation with pay shall be given after three (3) years of employment.

Fifteen (15) days vacation with pay shall be given after seven (7) years of employment.

Twenty (20) days vacation with pay shall be given after twenty (15) years of employment.

Unused vacation shall be paid at the end of the year.

Vacation time shall be paid out in blocks of one week where practical, and that employees must provide thirty (30) days advance notice of any vacation time period.

## 12.   VACATION PAY IN SEVERANCE OF EMPLOYMENT

Vacation shall be earned and fully accrued on the date the employee becomes qualified by the length of service required under this Agreement and such employee shall receive his vacation pay despite his severance from employment for any reason whatsoever.

## 13.   BETTER WORKING CONDITIONS, RATES OF PAY

Where working conditions or rates of pay which are more favorable to the employees than the working conditions or rates of pay mentioned herein, have been established and are at present in effect, then said more favorable working conditions or rates of pay shall continue for the term of this Agreement

## 14A.   DRUG TESTING

The parties agree to add a Drug and Alcohol Testing policy to the CBA to be supplied by the Employer for all employees.
Exhibition B, Drug and Alcohol policy addendum attached in the last page.

9

## 14.   DISCRIMINATION AGAINST UNION MEMBERS

The Company agrees that it will not discriminate in any manner against any employee because of his membership or activity in or on behalf of the Union.

> **A.** The Employer and the Union agrees not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individuals' race, color, religion, sex, national origin, age, citizenship status, marital status, sexual orientation and disability, nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, age, citizenship status, marital status, sexual orientation and disability.

> **B.** The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's lawful activity and/or support of the Union.

## 15.   EMPLOYER CORRESPONDENCE TO THE UNION

The Employer or the Union may use certified, registered mail, fax, or private carriers (fed-ex) for correspondence to the Union.

## 16.   STANDARDS OF WORKING CONDITIONS

The Company agrees that it will conform to the standards of working conditions and to the standards of fair Labor practices that are recognized in the industry. The Company further agrees that it will conform to and comply with all rules, regulations, requirements and laws of any legislative or administrative body, non discrimination on the basis of citizenship status, marital status, sexual orientation and disability, having jurisdiction over the working conditions and business practices in the Company's business and premises, and having jurisdiction with regard to the health and safety of the employees.

## 17.   DISCHARGE OF EMPLOYEES

The Employer except for just cause shall discharge no employee. When an employee is discharged, the Employer shall notify the Union by certified mail within five (5) days after the discharge and state the reasons for the discharge. If the Union in any case contends that an employee was discharged without just and sufficient cause then, and in that event, the validity of such discharge shall be submitted to Arbitration in the manner provided for Paragraph "8".

 If in the event that Arbitrator determines that an employee was discharged without just cause, the said employee shall be reinstated with full pay for all time lost by him/her from work as a result of said discharge.

10

18.   **DELINQUENT IN PAYMENTS**

Where the Company is more than thirty (30) days in arrears in forwarding an employee's Union dues to the Union or in making payments to the Welfare Fund, or there is a question as to who is entitled to participate in the benefits purchased by the Fund, or the amount required to be paid for the employee's benefit by the Company to the Fund, the Union shall have the right on five days' notice to the Employer, to inspect and examine the Books of the Company and the failure of the Company to grant such right to the Union shall constitute a breach of this contract by the Company.

19.   **NO STRIKE – NO LOCKOUT**

During the life of the Agreement, no strike shall be caused or sanctioned by the Union and the Employer until every peaceable method of settlement shall enter into no lockout or difference shall have been tried.  In all cases of an unauthorized cessation of work in violation of the Agreement, the Union shall not be liable for damages resulting from such unauthorized acts of its Members.

20.   **SICK LEAVE**

Sick leave shall be given to all employees covered by this Agreement per year as follows:

Six (6) days of leave shall be given, one (1) for every two (2) months.

Unused six days will be paid at the end of the year.  Sick leave will become applicable after the expiration of the probationary period.

The employer reserves the right to request a Doctor's note for each absence.  All unused sick leave remaining at the end of the year shall be paid at eight (8) hours times the employees applicable rate.

21.   **DEATH PROVISION**

In the event of death in Employee's immediate family (Father, Mother, Sister, Brother, Wife, or Child) employee is to receive maximum of two (2) days off with pay.  Employee must provide Death Certificate at request of Employer.  Employees will receive Funeral Day off with pay for attendance at funeral of Mother-in-law or Father-in-law.

22.   **LEAVE OF ABSENCE**

Employee requesting a leave of absence must submit a letter stating time requested and the reason.  Such request must be concurred by both the Employer and the Union.

## 23. <u>SUCCESSOR CLAUSE</u>

THIS AGREEMENT shall be binding upon the parties hereto, their Successors, Administrators, Executor, and Assigns. In the event an entire operation or any part thereof, is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the Terms and conditions of this Agreement for the life thereof. It is understood by this Section that the Parties hereto shall not use any leasing device to a third party to evade this Contract. The Employer shall give notice of the existence of this Agreement to any purchaser, Transferee, Transferee, Lessee, Assignee, etc., of the operation covered by this Agreement of part thereof. Such notice shall be in writing with copy to the Union at the time the seller, Transferor or a Lessor executes a Contract of Transaction as herein described. In the event the Employer fails to give the notice herein required and/or fails to require the Purchaser, Transferee or Lessee to assume the obligations of this Contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained, prior to the sale as a result of such failure to require assumption of the Terms of this Contract.

## 24. <u>401 K Plan</u>

The employer agrees to the implementation of a 401 K plan for all employees after they have been employed more then 120 days. This shall be a non- mandatory employer contribution and can change if the employer notifies the union in writing.

## 25. <u>HEALTH AND WELFARE</u>

Commencing with the effective date of this agreement, the Employer shall join and contribute to the LIFE BENEFIT PLAN "Fund". Effective Jan 1st, 2009 the contribution shall be $280.00 single/ $400.00 Family for PLAN A1 Multiplan coverage per month, per employee, for each employee who has completed 180 days of employment. Effective Jan. 1, 2009 all "A" drivers and Class "A" mechanics shall receive the Hip Health Plan. The employer agrees to pay the Single rate of $546.00 and $1263.00 Family per month, per employee for each employee who has completed 180 days of employment. If an employee chooses Family coverage, the employee must pay the difference of Single to Family. The Employer agrees that in the event there is an increase by the insurance carrier(s) that the Employer will meet to negotiate with the union over the allocation of any such increase.

The Employer shall make its payment to the Fund and file reports on forms prescribed by the Fund not later than the 15th day of each month for all monies due to the Fund for the Calendar month immediately preceding. Should the Employer fail to make such payments and reports by the 15$^{th\ day}$ of each month, it shall be deemed to have breached this Agreement.

The Fund is administered jointly by the Union and various Employers under agreement With the Union and is governed by an Agreement and Declaration of Trust. The Employer agrees to be bound by the terms of the Agreement and Declaration of Trust and the rules established by the Trustees governing contributions and delinquencies.

Title to all monies paid into or due and owing to the Fund shall be vested and remain exclusively in the Trustees of the Fund, the parties hereto agreeing that such Trustees shall have the right in their sole discretion, to take any action necessary to collect any contribution or monies due and owing to the Fund, or to allow the Union to do so.

In the event an Employer fails or refuses to make contributions within the time provided for herein, then the Union and /or the Trustees of the Fund are authorized to take any and all legal action, including arbitration under the arbitration clause of this agreement, for the purpose of collection any delinquency from the Employer.

The remedy provided for herein shall be in addition to all other remedies available to the Union and the Trustees and may be exercised by the Union or the Trustees, anything in this Agreement to the contrary notwithstanding. An Employer who defaults in the payment of contributions to the Fund shall pay, upon demand, the unpaid contributions, interest on those contributions in the amount of one and one-half (1 ½) percent per month, reasonable attorney's fees, costs of the action and liquidated damages up to twenty (20%) percent of the amount due. In addition to which, the delinquent Employer shall be subject to any and all other legal or equitable relief that an arbitrator or court, as the case may be, deemed appropriate. The Employer shall file such reports and information together with such payments as may be necessary for the proper administration of said Fund. It is understood and agreed that the words "each day worked" shall be interpreted to mean all days on which straight time wages are paid pursuant to this Agreement, regardless of whether actual work is performed or not, including, but not limited to, holidays and vacations.

The Employer shall make available to the Fund any and all pertinent records of the employees covered by the Fund that may shall, from time to time, open its books and records containing wage and hour information to auditors to be designated by the Trustees of the Fund.

The Employer agrees to continue to make contributions to the Fund for not more than six (6) months on behalf of any employee of the Employer who is injured on the job while working for the Employer, unless the employee is working somewhere else.

## 26.   EFFECTIVE DATE OF AGREEMENT

This AGREEMENT shall become effective 12:00am on the 1st day of Jan. 2012, and shall continue until the expiring date Midnight on the 31[th] day of December 2015. It shall thereafter automatically renew itself for and additional one year period, unless either Party gives the other Party at least sixty (60) days notice in writing, prior to the date fixed for expiration herein, that said Party does not desire the said Contract to automatically renew itself for an additional one year period.

## 27.   AGREEMENTS WITH EMPLOYERS

The Employer agrees not to enter into any Agreements or Contracts with his employees, individually or collectively which in any way conflict with the terms and provisions of this Agreement. Any such Agreements shall be null and void.

## 28.   JOB OPPORTUNITIES

13

For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that no work or service of the kind or nature of type covered by, presently performed, or hereafter assigned to the Collective Bargaining Unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or nominated employees, unless otherwise provided for in this Agreement. The Employer is allowed to hire subcontractors only under conditions that all employees covered by this Agreement are working and no employees are laid off

## 29. LEGAL MINIMUMS

Whenever the legal minimum wage is increased under federal or state law, minimum wages under this Agreement shall be at least twenty-five ($.25) cents above such legal minimum wage. In the event of any disagreement on such increases, the matter shall be treated as a dispute under ARTICLE 8. If ever the legal minimum is increased the Employer shall pay the higher of the increase or the contract increase.

## 30. SEVERABILITY

It is understood and agreed that all of the provisions of this Agreement are subject to all applicable laws now or hereafter in effect, and to the lawful regulations, rulings and orders of governmental commissions or agencies having jurisdiction over this Agreement. If any provision of this Agreement is in contravention of the laws or regulations of the United States or of the State of or any other governmental entity having jurisdiction of this Agreement, such provision shall be superseded by the appropriate provision of such law or regulation, if any, so long as same is in force and effect, but all other provisions of this Agreement shall continue in full force and effect.

## 31. MILITARY SERVICE

Employees enlisting or entering the Military or naval service of the United States, pursuant to the provisions of the Selective Service Act of 1948, shall be granted all rights and privileges provided for by the ACT.

IN WITNESS WHEREOF, THE PARTIES have caused these presents to be duly executed by their respective Officers the day and year first above written.

League of International Federated Employees

By: _____

AS TO THE EMPLOYER

_____

Attest Liberty Ashes Inc.

By: _Sec/Tras_  1/1/12
Title

14

## SCHEDULE "A" WAGES

1. The Employer agrees to a "Boot allowance/Uniform cleaning allowance" for the following classifications in the following amounts for calendar year 2013:

   (a)    Drivers/Mechanics - $600.00
   (b)    Helpers/Welders -  $300.00

2. Payment of the amounts referred to in paragraph 1(a) and (b) shall be made in three (3) equal payments on the following dates:

   (a) First payment April 1, 2013 ($200.00/$104.00 respectively);
   (b) Second payment July 1, 2013 ($200.00/$104.00 respectively);
   (c) Third payment October 1, 2013 ($200.00/$104.00 respectively);

3. The Parties agree that there shall be a reopener for purposes of negotiating additional wage increases and/or 401(k) contributions prior to December 31, 2013.

4. The Employer also agrees to pay a Christmas Bonus during the payroll period proceeding the Holiday, in the following amounts:

   (a) Drivers/Mechanics -    $500.00
   (b) Helpers/Welders -    $250.00

5. All other terms and conditions as contained in the current CBA will remain in full force and effect, for an additional three (3) year through December 31, 2015.

All employees shall be reviewed periodically by management for merit increases.
This shall be a sole management decision.

15

## Minimum Starting rate

Starting minimum wage rate for all employees covered by this Agreement shall be as follows:

Drivers - $15.00

Helpers - $ 8.00

Class A Mechanics - $14.00

Shuttle Drivers - $14.00

Welder - $8.00

Non-CDL Truck Drivers - $8.00

The Employer agrees to give a twenty ($20) dollar food coupon/check for turkey/ham for Thanksgiving each year for all employees with six (6) months or more of employment.

Exhibition B, Drug and Alcohol Policy

**MEMORANDUM OF AGREEMENT**

This Memorandum of Agreement ("MoA") is dated this 22nd day of December, 2015, by and between L. 890 LIFE ("890") and Liberty Ashes, Inc. ("Liberty" or "Employer").

WHEREAS the Parties are signatories to a Collective Bargaining Agreement ("CBA") for the period of January 1, 2012 through December 31, 2015;

WHEREAS the Employer and 890 have met to negotiate a successor agreement;

WHEREAS the Parties wish to execute this MoA to acknowledge the modifications to the existing CBA from those negotiations;

NOW, THEREFORE, the parties agree as follows:

1. Effective January 1, 2016, the Employer shall contribute into the Emblem Health Care Plan instead of the Union Multiplan for Drivers only.  The Driver's shall contribute $55 per week toward the premium costs.  All Helpers, Mechanics and Welders shall remain in the Unions Multiplan.

2. There shall be a Wage Reopener in each subsequent November concerning Wage Increases to be effective January 1, 2017 and January 1, 2018.

3. The term of the successor CBA shall be for the period of January 1, 2016 through December 31, 2018.

4. All other terms and conditions of employment as contained in the expired CBA, and any ~~Moan~~ *MoA* executed between the parties after the execution of the prior CBA, shall remain in full force and effect.

LIBERTY ASHES INC.

_____
Steven Bellino, Owner
12/22/15

LOCAL 890 LIFE

_____ 12/22/15
Dina Chiclana, Business Agent

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement ("MOA") is dated this 28th day of December, 2016, by and between Local 890, LIFE ("Union" or "Local 890"), and Liberty Ashes, Inc. ("Liberty Ashes") (jointly referred to as the "Parties").

WHEREAS, the Union and Liberty Ashes are signatories to a Collective Bargaining Agreement ("CBA") for the period of January 1, 2016 through December 31, 2018;

WHEREAS, Liberty Ashes and Local 890 met to negotiate a mid-term modification to the CBA on December 28th, 2016;

WHEREAS, Liberty Ashes and Local 890 met to negotiate a Wage Re-Opener as is required pursuant to the terms of the current CBA;

WHEREAS, the Parties wish to execute this MOA to modify the existing CBA between the the Union and Liberty Ashes;

NOW, THEREFORE, the Parties agree as follows:

1. The Grievance and Arbitration Clause of the CBA, Article 8, will be amended to reflect the following additional language:

   To ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour statutes, all claims, accruing at any time, brought by either the Union or Employees, concerning an employee's hours and wages including, but not limited to, claims arising under the Fair Labor Standards Act ("FLSA"), the New York Labor Law or Local Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in the collective bargaining agreement. There shall be no right or authority for any of the above claims to be arbitrated



on a class wide basis. The costs of the arbitration shall be borne equally between the Union and the Employer and not the employee.

2. Liberty Ashes will pay to each bargaining unit Employee, upon ratification of the language referred to in Paragraph 1 above, a bonus in the amount of $156.00, to be paid on the next paydate of Liberty Ashes, to wit, January 6, 2017.

3. The Parties have also agreed to the following amount to be paid to the Employees pursuant to negotiations in accordance with the "Wage Re-Opener" as contained in the Current CBA, Appendix "A": effective January 1, 2017, all Employees shall receive a $0.175 (17 and a half cents) per hour wage increase. Said amount will be paid in addition to the amount as per Paragraph 2 above.

4. The Driver/Helper Reward Plan and Clean Truck Program shall be eliminated effective December 31, 2016.

5. All ~~Drivers and Helpers~~ Employees will receive a $200.00 boot allowance once per year to be paid in the month of January for each successive year of the CBA.

6. The Amount of the Cleaning Allowance currently in the CBA will be applied to the maintenance of a Uniform Service that is to be supplied by Liberty Ashes to all Bargaining Unit Members, at no cost to the Employees, to the extent of five (5) shirts and five (5) pants per week.

7. Liberty Ashes will commit to building and finishing a locker room for the unit employees.

8. All other terms and conditions as contained in the current CBA between Local 890 Land Liberty Ashes will remain in full force and effect.


THE REST OF THIS PAGE IS INTENTIONALLY BLANK

**LOCAL 890, LIFE:**

Name: _Dira Chiclana_

Title: _Union Delegate_


**LIBERTY ASHES, INC.:**

Name: STEPHEN BELLINO

Title: SRC/TURY                    12/28/16


**EMPLOYEES OF LIBERTY ASHES, INC.:**

DATE

Chandra B Shanshium    12-28-2016

Rajesh Kumar    12-28-16

FRANCISO GONZALEZ    12/28/16

Shabanice Ramtarkue    12/28/11

D. Banekos    12/28/2016

                    12/28/2016  Nelson Sierra

                    28/12/16

Lorrain Pryor    12-28-16

Shaun Williams    12/28/16

J. Cabrera    12/28/16

Norman Austrich

                    Driver

④

*Will Damage*

Robert Console 12/29/16

H Washington 12/29/16

Jery Barber 12/29/16

Dereck De Alvera 12/29/2016

Curtis ward 12-29-16

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____