Page 1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------
CARL ORLANDO, JR., on behalf of himself
and others similarly situated,

                           Plaintiff,

          -against-

LIBERTY ASHES, INC., FRANCESCO
BELLINO, MICHAEL BELLINO, JR.,
STEPHEN BELLINO, and MICHAEL
BELLINO,
                           Defendants.
---------------------------------------------

                    March 27, 2018
                    3:13 p.m.




          DEPOSITION of JESSICA GAMBINO,
taken by Plaintiff, pursuant to Subpoena,
held at the offices of JOSEPH &
KIRSCHENBAUM LLP, 32 Broadway, New York,
New York before Wayne Hock, a Notary
Public of the State of New York.
```

```
 1
 2    A P P E A R A N C E S:
 3
         JOSEPH & KIRSCHENBAUM LLP
 4       Attorneys for Plaintiff
              32 Broadway
 5            New York, New York 10004
 6       BY:   DENISE SCHULMAN, ESQ.
              FINN DUSENBERY, ESQ.
 7
 8       TRIVELLA & FORTE LLP
         Attorneys for Defendants
 9            1311 Mamaroneck Avenue
              White Plains, New York 10605
10
         BY:   CHRISTOPHER SMITH, ESQ.
11
12       STARR, GERN, DAVISON & RUBIN, P.C.
         Attorneys for Witness
13            105 Eisenhower Parkway
              Roseland, New Jersey 07068
14
         BY:   LISA J. JURICK, ESQ.
15
16                  *       *       *
17
18
19
20
21
22
23
24
25
```

1
2     J E S S I C A    G A M B I N O, having
3         been first duly sworn by a
4         Notary Public of the State of
5         New York, upon being examined,
6         testified as follows:
7  EXAMINATION BY
8  MS. SCHULMAN:
9       Q.     Please state your full name.
10      A.     Jessica Gambino.
11      Q.     What is your current address?
12      A.     325 73rd Street, Brooklyn, New
13 York 11209.
14      Q.     Good afternoon, Ms. Gambino.
15      A.     Good afternoon.
16      Q.     Have you ever been deposed
17 before?
18      A.     No.
19      Q.     So I'm just going to go over a
20 few ground rules before we get started.
21             I'm going to ask you a number of
22 questions.  The court reporter here will
23 take down everything we say.  Because of
24 that, it's important that you give verbal
25 answers so the court reporter can record

```
                                              Page 6
 1                  J. Gambino
 2       Q.    Did you talk to anyone other
 3   than your attorneys about this deposition?
 4       A.    No.
 5       Q.    And what is your position with
 6   Local 890 League of International
 7   Federated Employees?
 8       A.    Senior office manager.
 9       Q.    And the union is referred to as
10   LIFE; correct?
11       A.    Yes, League of International
12   Federated Employees.
13       Q.    Just to keep things shorter, I'm
14   going to refer to it as LIFE.
15             How long have you been the
16   office manager there?
17       A.    Fifteen years.
18             (Whereupon, a document entitled
19        Subpoena to Testify At a Deposition in
20        a Civil Action was marked Plaintiff's
21        Exhibit 1 for identification.)
22       Q.    I'm showing you what's been
23   marked as Exhibit 1.  This is the subpoena
24   that we served on LIFE for today's
25   deposition.
```

1  J. Gambino
2  Have you seen this before?
3  A. Yes.
4  Q. And if you turn to the last
5  page, there's a list of topics for this
6  deposition, and you're prepared to testify
7  about all of these topics today?
8  A. Yes.
9  MS. SCHULMAN: You can put that
10  away.
11  Q. And what are your
12  responsibilities as the senior office
13  manager at LIFE?
14  A. I manage the office, all the
15  in-office employees and outside employees
16  as well.
17  Q. And LIFE is the union for
18  employees of Liberty Ashes; correct?
19  A. Correct.
20  Q. Do you know how long that's been
21  the case?
22  A. I'm not a hundred percent sure.
23  Q. For many years?
24  A. Yes.
25  Q. And how does someone become a

```
                                               Page 12
 1                    J. Gambino
 2       A.     Correct.
 3       Q.     And then a little further down
 4   it says date of term.
 5              What does that mean?
 6       A.     Date of termination.
 7       Q.     Termination of what?
 8       A.     Of being a union member.
 9       Q.     So now looking on -- let's skip
10   LIFE 022 because it's not the clearest
11   copy of that type of document.
12              LIFE 23, that's another employee
13   file inquiry for Leonard Menna; correct?
14       A.     Correct.
15       Q.     And then the next page, LIFE 24,
16   this is the application and checkoff
17   authorization for Mr. Menna; correct?
18       A.     Correct.
19       Q.     And so if you look now it's on
20   the bottom of the page, in big letters it
21   says LIFE and then the title is
22   Application and Checkoff Authorization
23   Blank.
24              Does that mean this is the
25   application for membership?
```

```
                                                  Page 13
 1                       J. Gambino
 2         A.    Yes.
 3         Q.    And this has to be filled out in
 4   order to become a member; correct?
 5         A.    Correct.
 6         Q.    Who gives these to an employee
 7   to fill out, LIFE or Liberty, the company?
 8         A.    LIFE.
 9         Q.    Who hands them out?
10         A.    Our union delegates.
11         Q.    Who's the union delegate for
12   Liberty?
13         A.    I believe it's Dina Chiclana.
14         Q.    Now, at the top of the page
15   there's some handwritten stuff.  At the
16   very top there's a number sign 0502.
17               Do you see that?
18         A.    Yes.
19         Q.    Do you know what that means?
20         A.    Yes, that's the shop number for
21   Liberty Ash.
22         Q.    And who wrote that in?
23         A.    Whoever enrolled this person
24   into our system.
25         Q.    So someone from LIFE?
```

1  J. Gambino
2  collective bargaining agreements between
3  Liberty and LIFE?
4      A.   Yes.
5           (Whereupon, a multi-page
6      document was marked Plaintiff's
7      Exhibit 4 for identification.)
8      Q.   I'm showing you what's been
9  marked as Exhibit 4.  This is -- this was
10 filed -- this is a docket entry 99-1 from
11 this case or 90-1.  It's a little hard to
12 read because I think it was filed twice.
13          Is this the collective
14 bargaining agreement between LIFE and
15 Liberty Ashes for the period January 1,
16 2012 to December 31, 2015?
17     A.   (Reviewing).
18          Yes.
19     Q.   In what capacity are you
20 familiar with the CBAs?
21     A.   Somewhat.
22     Q.   How have you gained whatever
23 familiarity you do have?
24     A.   Basically, I'm only in charge of
25 setting up the contracts but I have

Page 22

1       J. Gambino
2  nothing to do as far as negotiations.
3       Q.    So you're just handling the
4  administrative end of things?
5       A.    Exactly.
6            (Whereupon, a document entitled
7       Memorandum of Agreement
8       was marked Plaintiff's Exhibit 5
9       for identification.)
10      Q.    I'm showing you what's been
11 marked as Exhibit 5.  This is Bates
12 stamped LIFE 85.
13           Is this a memorandum of
14 agreement between Liberty Ashes and LIFE
15 dated December 22, 2015?
16      A.    Yes.
17           (Whereupon, a document entitled
18      Memorandum of Agreement was marked
19      Plaintiff's Exhibit 6
20      for identification.)
21      Q.    I'm showing you what's been
22 marked as Exhibit 6.  This is Bates
23 stamped LIFE 86 to 89.
24           Is this a memorandum of
25 agreement between Liberty and LIFE from

```
 1                J. Gambino
 2  December, 2016?
 3       A.    Yes.
 4       Q.    Do you have any understanding of
 5  how this memorandum of agreement came
 6  about?
 7       A.    No, I'm just an administrator
 8  when it comes to it.
 9       Q.    Do you know whether CBAs or
10  memorandums of agreement between Liberty
11  and LIFE need to be ratified by the
12  membership?
13       A.    Yes.
14       Q.    Yes, you know or yes, they do,
15  or both?
16       A.    Both.
17       Q.    How do you know that they need
18  to be ratified?
19       A.    From working in the union.
20  That's what I learned.
21       Q.    That they need to be ratified?
22       A.    Uh-huh.
23       Q.    Do you know who's eligible to
24  vote on a ratification?
25       A.    No.
```

Page 29

1        J. Gambino
2    Q.   Does LIFE have withdrawal cards?
3    A.   No.
4        MS. SCHULMAN: Let's take a short
5    break.
6        (Whereupon a break was taken)
7        MS. SCHULMAN: I don't have any
8    other questions.
9        MR. SMITH: I just want to make
10   sure the documents produced were
11   business records of LIFE, so I guess
12   we can mark --
13       MS. SCHULMAN: You don't want to
14   use the same ones as us?
15       MR. SMITH: Off the record.
16       (Discussion held off the record)
17       MR. SMITH: So we'll mark this as
18   nine.  Exhibit 9 is documents Bates
19   stamped previously as LIFE 004 through
20   and including LIFE 089.
21       (Whereupon, multiple documents
22   were marked Plaintiff's Exhibit 9
23   for identification.)
24       (CONTINUED ON NEXT PAGE)
25

Page 30

```
 1                    J. Gambino
 2   EXAMINATION BY
 3   MR. SMITH:
 4        Q.    I'm just going to show you what
 5   we're going to have marked as Exhibit 9.
 6              Can you just tell me if those
 7   are records or copies produced that were
 8   made by personnel or staff of LIFE?
 9              MS. JURICK:  Take your time.
10              THE WITNESS:   (Reviewing).
11        Q.    Or it could be people acting
12   under the control of LIFE representatives
13   as well.
14        A.    (Reviewing).
15              Yes.
16        Q.    And were those documents kept in
17   the regular course of business of LIFE?
18        A.    Yes.
19        Q.    And is it the regular course of
20   business for LIFE to make such records?
21        A.    Yes.
22              (CONTINUED ON NEXT PAGE)
23
24
25
```