UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
CARL ORLANDO, JR., on behalf of himself
and others similarly situated,

                                      Plaintiff,             15-CV-09434 (RJS)

                  -against-

LIBERTY ASHES INC., FRANCESCO BELLINO,
MICHAEL BELLINO, JR., STEPHEN BELLINO and
MICHAEL BELLINO,

                                     Defendants.
-------------------------------------------------------------------------------x

 

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO COMPEL
<u>ARBITRATION AND DISMISS THE COMPLAINT</u>**

 

                                        Respectfully submitted,

                                        TRIVELLA & FORTE, LLP
                                        1311 Mamaroneck Avenue, Suite 170
                                        White Plains, New York 10605
                                        By: Christopher Smith
                                        Telephone: (914) 949-9075
                                        Facsimile: (914) 949-4752
                                        *Defendants' Attorneys*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

FACTS and PROCEDURAL HISTORY ...................................................................... 1

JURISDICTION .........................................................................**Error! Bookmark not defined.**

LEGAL ARGUMENT.................................................................................................. 4

    1.The Court Should Dismiss and Compel Arbitration of the Causes of Action Asserted by the
    Named and Opt-In Plaintiffs and Putative Class or Collective Members............................... 4

    A.    Local 890's Negotiation of the 12/28/16 Memorandum of Agreement Binds Past,
    Present  and Future Liberty Ashes, Inc. Employees Including the Named and Opt-In
    Plaintiffs .............................................................................................................................*4*

    B.    The Court Should Enforce the 12/28/16 Memorandum of Agreement, Which Contains
    an Explicit Mandatory Arbitration Provision, a Class Action Waiver, No Temporal
    Limitation, and Governs Plaintiffs and Putative Plaintiffs' Causes of Action ............................*8*

    C.    The Mandatory Arbitration Provision in the 12/28/16 Memorandum of Agreement
    Applies to All Claims, Including Those That Accrued Prior to the Execution of the 12/28/16
    Memorandum of Agreement ......................................................................................*13*

    D.    The Mandatory Arbitration and Class Action Waiver Language in the 12/28/16
    Memorandum of Agreement Does Not Violate the National Labor Relations Act ...................*17*

CONCLUSION......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 1459, 173 L. Ed. 2d 398 (2009) ... 12

*Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 481 (2d Cir. 2011).................... passim

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)............................ 10

*Citigroup, Inc. v. Abu Dhabi Investment Auth.*, 776 F.3d 126, 130 (2d Cir.2015)...................... 16

*Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972)....................................... 17

*Duraku v. Tishman Speyer Properties, Inc.*, 714 F.Supp.2d 470, 474 (S.D.N.Y.2010)............... 16

*Duran v. J. Hass Grp., L.L.C.*, 531 Fed. Appx. 146, 147 (2d Cir.2013) (summary order) .......... 16

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion) ....................................................................................... 16, 18

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir.2001)................................................................................................................. 10

*Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016)............................................................................................ 15, 17, 19

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) ........................................................................................................................ 10

*Luden's Inc. v Local Union No. 6 of Bakery, Confectionery and Tobacco Workers' Intern. Union of Am.*, 28 F.3d 347, 361 (3d Cir. 1994)....................................................................... 18

*McMahan Sec. Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82, 85-86 (2d Cir. 1994)......... 12

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)........................................................................................... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) .............. 10, 19

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir.1996)................. 10

*Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991)......................................................................................................................... 11

*Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 928 (2d Cir.1990) ........................................................................................................... 18

*PRL USA Holdings, Inc. v United States Polo Ass'n, Inc.*, 2015 WL 1442487, at *3 (S.D.N.Y. Mar. 27, 2015, Sullivan, J.) ................................................................................... 10

*Reid v. Supershuttle Int'l, Inc.*, No. 08CV4854 JG VVP, 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) ...................................................................................................... 17

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d. Cir. 1999) ................................................................................................... 15, 16

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 fn. 8 (2d Cir. 2013) ................................ 19

*UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 654 (2d Cir.2011)................................................................................................................. 16

*Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir.2003) ............................................................... 18

**Statutes**

9 U.S.C. § 1 ............................................................................................................................... 4

9 U.S.C. § 3 ............................................................................................................................. 10

New York Labor Law § 195 ..................................................................................................... 2

## PRELIMINARY STATEMENT

Defendants move to dismiss the Complaint[1] or stay this litigation and compel the Named, Putative and Opt-In Plaintiffs[2] to arbitrate any wage or other dispute accruing at any time. In December 2016 Plaintiffs' exclusive collective bargaining labor organization LIFE Local 890,[3] signed a 12/28/16 Memorandum of Agreement[4] clarifying arbitration clauses to prior Liberty Ashes Inc./Local 890 collective bargaining agreements. The 12/28/16 Memorandum of Agreement specifically references the Fair Labor Standards Act, New York Labor Law and local law wage claims, and requires all present, former and future Liberty Ashes Inc. employees to submit any wage claims "accruing at any time" to binding individual arbitration. The 12/28/16 Memorandum of Agreement specifically prohibits class-wide arbitration wage grievances. The Court should, respectfully, enforce this 12/28/16 Memorandum of Agreement and dismiss or stay the action pending arbitration. There is a presumption of labor dispute arbitrability. Supreme Court case precedent and the Federal Arbitration Act mandate a District Court submit issues to arbitration where, as here, it cannot be said with positive assurance the parties have not agreed to arbitrate the dispute.

## FACTS and PROCEDURAL HISTORY

The relevant facts are stated in the Francesco Bellino May 25, 2018 Declaration[5] and the attached deposition excerpts.[6] Liberty Ashes, Inc. is a freight transport service located in Jamaica, New York. Its business is removing freight, including mixed solid waste and corrugated

---

[1] ECF Doc. No.  1. Hereinafter references to "Doc. No." are to the Court docket.
[2] Hereinafter collectively "Plaintiffs".
[3] Hereinafter "Local 890".
[4] Copies of pages of the collective bargaining and memorandum of agreements are annexed to the Smith 5/23/18 Declaration at Exhibits A-C.
[5] Hereinafter "Bellino Declaration, ¶ ".
[6] Smith 5/23/18 Declaration, Exhibits E-G, J.

cardboard recyclables, from New York City commercial and residential establishments and placing the freight in interstate commerce.[7]

In December 2015, Plaintiff Carl Orlando, Jr., who worked for Liberty Ashes, Inc. as a driver for approximately four months, commenced this action on behalf of himself and purported similarly situated hourly employees. Complaint, Doc. No. 1. Mr. Orlando alleges Liberty Ashes, Inc. engaged in improper wage practices which deprived hourly employees of wages and overtime compensation, violating the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and local law. *Id.* The Complaint also contains a wage retaliation claim. Four former employees of Liberty Ashes, Inc., Leonard Menna (truck driver), Quamaine Powell (truck driver), Luis Acevedo (truck helper), and Ramdeo Persad (truck helper) have opted into this litigation.

Plaintiffs filed this class and collective action containing eight causes of action. The first cause of action seeks individual and class relief and alleges a Fair Labor Standards Act overtime claim. The second cause of action seeks individual and class relief and alleges a New York Labor Law overtime claim. The third cause of action seeks individual and class relief and alleges a failure to provide Notice and Acknowledgement of Pay Rate and Payday under New York Labor Law § 195 claim. The fourth, fifth, seventh and eighth causes of action relate only to Plaintiff Orlando, and allege retaliation, frequency of payment, and minimum wage claims. Defendants filed the Answer[8] to the Complaint.

The Named and Opt-In Plaintiffs, as well as the Putative Class and Collective Plaintiffs, are or were all members of and/or represented by Local 890, LIFE ("Local 890") during their

---

[7] Bellino Declaration, ¶ 3.
[8] 1/29/ 16 Answer (hereinafter "Answer"). Doc. No. 21.

employment with Liberty Ashes Inc.[9] The terms of their employment, including wages, are covered by a series of collective bargaining agreements between Local 890 and Liberty Ashes Inc.[10] On or about December 28, 2016, as part of a collective bargaining wage reopener, Local 890 and Liberty Ashes Inc. met to negotiate a modified collective bargaining agreement.[11] During these negotiations, Local 890 and Liberty Ashes Inc. reached the 12/28/16 Memorandum of Agreement, subject to bargaining unit drivers, helpers, welders and mechanics' ratification.[12] The 12/28/16 Memorandum of Agreement contains a wage increase and other terms, including the following grievance and arbitration language:

> To ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour statutes, all claims, accruing at any time, brought by either the Union or Employees, concerning an employee's hours or wages including, but not limited to, claims arising under the Fair Labor Standards Act ("FLSA"), the New York Labor Law or Local Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in the collective bargaining agreement. There shall be no right or authority for any of the above claims to be arbitrated on a class wide basis. The costs of the arbitration shall be borne equally between the Union and the Employer and not the employee.

12/28/16 Memorandum of Agreement, ¶ 1.

The Memorandum of Agreement was signed and ratified by the majority of Liberty Ashes Inc. drivers between December 28th and December 29th, 2016.[13]

Defendants previously moved to compel arbitration of Plaintiffs' causes of action. The

---

[9] Bellino Declaration, ¶ 4; Local 890 Gambino Deposition 7: 17-19, at Smith Declaration, Ex. H.
[10] Bellino Declaration, ¶ 4.
[11] Bellino Declaration, ¶ 8.
[12] Bellino Declaration, ¶ 14; Local 890 Gambino Deposition 23: 9-22, at Smith Declaration, Ex. H.
[13] Bellino Declaration, ¶ 14; Local 890 Gambino Deposition 23: 9-22, at Smith Declaration, Ex. H.

Court, by 1/31/18 Order (Doc. No. 118), denied Defendants' motion to compel without prejudice to renew the motion after additional discovery relating to Plaintiffs' membership in Local 890. Defendants now renew their motion to dismiss the Complaint or stay the action and compel any Named or Opt-In or Putative Plaintiff or past, present or future driver or helper of Liberty Ashes Inc. to arbitrate these causes of action and any wage or other grievance, even for causes of action that predate the 12/28/16 Memorandum of Agreement ratification.

## <u>LEGAL ARGUMENT</u>

### 1. *The Court Should Dismiss and Compel Arbitration of the Causes of Action Asserted by the Named and Opt-In Plaintiffs and Putative Class or Collective Members*

**A.   Local 890's Negotiation of the 12/28/16 Memorandum of Agreement Binds Past, Present and Future Liberty Ashes, Inc. Employees Including the Named and Opt-In Plaintiffs**

Plaintiffs Acevedo, Powell, Menna, and Persad all were members of Local 890 at the time Local 890 negotiated the 12/28/16 Memorandum of Agreement. Plaintiffs Acevedo, Powell, Menna, and Persad admit they were all members of Local 890 at the time they worked for Liberty Ashes, Inc., and signed Local 890 authorization cards[14] containing the following language (ellipsis added):

> I, the undersigned, hereby apply for membership in the above Union and I authorize it to represent me for the purpose of collective bargaining …

> This authorization may be revoked by me as of any anniversary date hereof, by written notice of such revocation signed by me and

---

[14] The Smith 5/25/18 Declaration Exhibit I contains copies of the Plaintiffs Acevedo, Powell, Menna, and Persad Local 890 authorization cards.  The Smith 5/25/18 Declaration Exhibits E-G, J contain the relevant deposition transcript pages from the Plaintiffs Acevedo, Powell, Menna, and Persad Depositions where they admit membership in Local 890 and that they signed the Local 890 authorization cards. Acevedo Deposition, 20:1-6; 3/27/18 Acevedo Declaration, ¶ 6 (Doc. No. 106), Menna Deposition, 10:1-12; Powell Deposition 13;13-17, Persad Deposition 15: 10-22.

> given to my Employer and the Union by certified mail, not less than thirty (30) days nor more than sixty (60) days before any such anniversary date, or on the termination date of the Collective Bargaining Agreement covering my employment, by like notice prior to such termination date, whichever occurs sooner.

The cards authorized Local 890 to collectively bargain the terms and conditions of their employment with Liberty Ashes, Inc. until they sent written revocation of that authorization. Plaintiffs Acevedo, Powell, Menna and Persad never sent any revocation of Local 890's authorization to bargain with Liberty Ashes, Inc. regarding the terms and conditions of their employment.  The Smith Declaration, Ex. D has pages of Local 890's Constitution and By-Laws. The Local 890 Constitution states:

> Membership in the Union constitutes acceptance by each member to be bound by the provisions of the Constitution … Membership in the Union constitutes an exclusive irrevocable designation of the union by each member to engage in collective bargaining on his behalf …

Local 890 Constitution, p. 6, ¶ D.

Plaintiffs offer no evidence they complied with the procedure on the authorization cards or otherwise make any attempt to revoke Local 890's authorization to bargain on their behalf prior to the ratification of the 12/28/16 Memorandum of Agreement. The only evidence Plaintiffs submit that they gave notice to Local 890 or Liberty Ashes, Inc. of their intent to revoke Local 890's authorization to collectively bargain on their behalf with Liberty Ashes, Inc. regarding the terms and conditions of their employment, including the arbitration of grievance procedures relating to their employment with Liberty Ashes, Inc., is an 11/14/17 letter from Plaintiffs' counsel to Local 890.

Based on this record Defendants respectfully submit this Court should find that Plaintiffs Acevedo, Powell, Menna, and Persad had not withdrawn authority from Local 890 to bargain on

their behalf at the time the 12/28/16 Memorandum of Agreement was executed by Local 890 and

Liberty Ashes, Inc. *See Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers &*

*Helpers, AFL-CIO v. Local Lodge D129 of Cement, Lime, Gypsum & Allied Workers Div. of Int'l*

*Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO, 910 F.2d*

*1056 (2d Cir. 1990)*(citing NLRB v. Martin A. Gleason, Inc., 534 F.2d 466, 476 (2d Cir.

1976)(noting that while a union member has a right to resign from union membership, 'a union

constitution and bylaws may impose reasonable restrictions on this right.'). *See also Raymond v.*

*Mid-Bronx Haulage Corp.*, No. 15-CV-5803, Order, Doc. No. 146, pp. 4-5. (11/3/17, Sullivan,

J.). The Seventh Circuit Court of Appeals previously opined:

> unions may bargain on behalf of retirees if the employer is willing,
> … *Pittsburgh Plate Glass*, 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n.
> 20; *United Automobile Workers v. Yard-Man, Inc.*, 716 F.2d 1476,
> 1484 (6th Cir.1983). Former employees might choose the union as
> their agent for purposes of implementing or compromising claims
> arising under a collective bargaining agreement. It is even possible
> that employees may assent through the agreement itself to make
> the union their agent to resolve all disputes arising out of the
> implementation of that agreement-disputes that by definition arise
> during the employment relation-even if they leave work before its
> end. Such a consent would enable the union and the employer to
> administer the agreement without the complications caused by a
> proliferation of parties as employees quit or leave. Perhaps consent
> of this sort should be implied from the presence of an arbitration
> clause, which appears to put the Union in charge of handling
> claims of current and former employees. Persons represented by a
> union and covered by a collective bargaining agreement-even those
> no longer working-must exhaust union remedies before filing suit
> under § 301, *see Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85
> S.Ct. 614, 13 L.Ed.2d 580 (1965), which may imply that the union
> always administers the collective bargaining agreement even for
> those no longer classified as statutory "employees". *Cf.* David E.
> Feller, *A General Theory of the Collective Bargaining
> Agreement*, 61 Cal.L.Rev. 663, 774, 792, 811 (1973) (contending
> that collective bargaining agreements necessarily exclude the
> possibility of individual enforcement rights).

*Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 766 (7th Cir. 1988). *See also United Steelworkers*

Page 6 of 22.

*of Am., AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 81 (3d Cir. 1978) (union authorized to represent former employees of predecessor company in negotiating new benefits for them, after their employment ceased, in collective bargaining agreement with successor company that never employed them and in seeking arbitration for the retirees). Plaintiffs Acevedo, Powell, Menna, and Persad voluntarily consented in writing and contractually committed to Local 890 representing them in negotiations with Liberty Ashes, Inc., without any temporal limitation other than a limitation imposed if they send notification of revocation of that representation. There is no evidence Plaintiffs Acevedo, Powell, Menna, and Persad sent such revocation or withdrew their Local 890 membership prior to the ratification of the 12/28/16 Memorandum of Agreement. Plaintiff Orlando was a member of the bargaining unit when he worked for Liberty Ashes, Inc.[15] There is no evidence Mr. Orlando ever sent Local 890 or anyone else notice that Local 890 was not authorized to collectively bargain on his behalf regarding the terms and conditions of his Liberty Ashes, Inc. employment.   Liberty Ashes, Inc. consented to negotiate the 12/28/16 Memorandum of Agreement with Local 890. There is no legal impediment to Local 890 negotiating on behalf of Plaintiffs Acevedo, Powell, Menna, Orlando, Persad or any past, present, or future employee of Liberty Ashes, Inc. Local 890 represented Liberty Ashes, Inc. employees that are putative Plaintiffs in this action. There is no evidence any present or former Liberty Ashes, Inc. employee revoked the employee's authorization for Local 890 to negotiate on the employee's behalf or withdrew from Local 890. Therefore, the Court should, respectfully, grant Defendants' motion and compel the Named and Opt-In Plaintiffs, and all past, present, and future employees, including all past, present and future Liberty Ashes, Inc. drivers, helpers, welders and mechanics, with wage and other claims akin to the claims in this lawsuit, to arbitrate

---

[15] Bellino Declaration, ¶ 17.

their claims on an individual basis and stay or dismiss this lawsuit.[16]

### B.   The Court Should Enforce the 12/28/16 Memorandum of Agreement, Which Contains an Explicit Mandatory Arbitration Provision, a Class Action Waiver, No Temporal Limitation, and Governs Plaintiffs and Putative Plaintiffs' Causes of Action

The Court should compel arbitration of the Named and Opt-In Plaintiffs and putative

Plaintiffs' causes of action. The United States Supreme Court previously held:

> Congress enacted the FAA in response to widespread judicial hostility to **2309 arbitration. *See AT&T Mobility*, *supra*, at ——, 131 S.Ct., at 1745. As relevant here, the Act provides:
> "A written provision in any maritime transaction or contract evidencing a transaction involving commerce to *233 settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
> This text reflects the overarching principle that arbitration is a matter of contract. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ——, ——, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). And consistent with that text, courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), including terms that "specify with whom [the parties] choose to arbitrate their disputes," *Stolt– Nielsen*, *supra*, at 683, 130 S.Ct. 1758, and "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been " 'overridden by a contrary congressional command.' " *CompuCredit Corp. v. Greenwood*, 565 U.S. ——, – ——, 132 S.Ct. 665, 668–669, 181 L.Ed.2d 586 (2012) (*quoting Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33, 133 S. Ct. 2304, 2308–09, 186 L.

---

[16] *Conners v. Gusano's Chicago Style Pizzeria*, 779 F.3d 835, 841 (8th Cir. 2015) ("Because the former employees lacked standing to challenge the current employees' arbitration agreement, the district court was without jurisdiction to enjoin that agreement's enforcement").

Ed. 2d 417 (2013). The United States Supreme Court also held on May 21, 2018:

> Should employees and employers be allowed to agree that any
> disputes between them will be resolved through one-on-one
> arbitration? Or should employees always be permitted to bring
> their claims in class or collective actions, no matter what they
> agreed with their employers? As a matter of policy these questions
> are surely debatable. But as a matter of law the answer is clear. In
> the Federal Arbitration Act, Congress has instructed federal courts
> to enforce arbitration agreements according to their terms—
> including terms providing for individualized proceedings …The
> Act, this Court has said, establishes "a liberal federal policy
> favoring arbitration agreements." Moses H. Cone Memorial
> Hospital v. Mercury Constr. Corp., 460 U. S. 1, 24 (1983) (citing
> Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U. S. 395
> (1967)); see id., at 404 (discussing "the plain meaning of the
> statute" and "the unmistakably clear congressional purpose that the
> arbitration procedure, when selected by the parties to a contract, be
> speedy and not subject to delay and obstruction in the courts")
> …the Arbitration Act requires courts "rigorously" to "enforce
> arbitration agreements according to their terms, including terms
> that specify *with whom* the parties choose to arbitrate their disputes
> and *the rules* under which that arbitration will be conducted."
> *American Express Co. v. Italian Colors Restaurant*, 570 U. S. 228,
> 233 (2013) (some emphasis added; citations, internal quotation
> marks, and brackets omitted).

*Epic Systems Corp. v. Lewis*, 584 U.S. ____, 2018 WL 2292444, (2018) (emphasis in original,

compelling individual arbitration of FLSA class claims).

This District Court previously held:

> Arbitration is a matter of contract, and parties may be forced to
> arbitrate a dispute only when they have previously agreed to
> arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475
> U.S. 643, 648 (1986). To determine whether a dispute is arbitrable,
> therefore, a court must decide two questions: "(1) whether there
> exists a valid agreement to arbitrate at all under the contract in
> question ... and if so, (2) whether the particular dispute sought to
> be arbitrated falls within the scope of the arbitration agreement."
> *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,*
> 246 F.3d 219, 226 (2d Cir.2001) (*quoting Nat'l Union Fire Ins. Co.
> v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir.1996)). In
> accordance with the Federal Arbitration Act ("FAA"), "any doubts

> concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). However, the FAA requires the consent of a party to arbitrate, and a party can be forced to arbitrate only those disputes that both parties agreed would be submitted to an arbitrator. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir.2001).

*PRL USA Holdings, Inc. v United States Polo Ass'n, Inc.*, 2015 WL 1442487, at *3 (S.D.N.Y.

Mar. 27, 2015, Sullivan, J.). Section 3 of the Federal Arbitration Act mandates:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties **stay** the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). A presumption of arbitrability exists pursuant to the Supreme

Court's mandate:

> An order to arbitrate the particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347,

1352-53, 4 L.Ed.2d 1409 (1960); *Niagara Hooker Employees Union v. Occidental Chem. Corp.*,

935 F.2d 1370, 1375 (2d Cir. 1991) ("disputes under a collective bargaining contract with an

arbitration clause are presumed to be arbitrable"); *see also Austin v. Owens-Brockway Glass

Container, Inc.*, 78 F.3d 875, 878 fn. 1(4th Cir. 1996)("a valid agreement to arbitrate future

disputes effectively ousts a court of jurisdiction."). "Federal policy strongly favors arbitration,

and a waiver of a right to arbitrate is not lightly inferred. *Carcich v. Rederi A/B Nordie*, 389 F.2d

692, 696 (2d Cir. 1968)." *Raymond v. Liberty Ashes, Inc. Haulage Corp.*, No. 15-CV-5803 (RJS), 2017 WL 5558760, at *2 (S.D.N.Y. May 24, 2017, Sullivan, J.)

Applying these principals, the Court should order the Named and Opt-In and Putative Plaintiffs and any past, present or future driver or helper working for Liberty Ashes Inc. to arbitrate any Fair Labor Standards Act, New York Labor Law, local law, statutory or common law wage claim, including wage retaliation claims, arising at any time.

Before entering into the 12/28/16 Memorandum of Agreement, Liberty Ashes, Inc. and Local 890 entered into a series of collective bargaining and memorandum of agreements.  Prior to execution of the 12/28/16 Memorandum of Agreement, the collective bargaining agreements required disputes between Liberty Ashes, Inc. and Local 890 to be submitted to a conference of representatives of Liberty Ashes, Inc. and Local 890 and provided that, if the representatives do not reach an agreement, either party may apply to a panel of arbitrators listed in the CBA and shall submit the grievance to the New York State Employment Relations Board if the parties can't agree on a panel arbitrator. The CBAs at paragraph 8 provide the arbitrator's award "shall be final and binding upon the parties" Liberty Ashes, Inc. and Local 890 were thus subject to the CBAs, and the arbitration provisions within the CBAs explicitly apply to disputes regarding employees' overtime and wages, which is the gravamen of Plaintiffs' claims here.

The 12/28/16 Memorandum of Agreement covers wage and hour claims. The 12/28/16 Memorandum of Agreement is enforceable against the Named, Opt-In and Putative Plaintiffs as their collective bargaining representative negotiated the arbitration requirement during arms-length collective bargaining negotiations. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 1459, 173 L. Ed. 2d 398 (2009) ("As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other

concessions from the employer, and courts generally may not interfere in this bargained-for exchange."); *McMahan Sec. Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 85-86 (2d Cir. 1994) ("[u]nder the Federal Arbitration Act, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. The FAA leaves no discretion with the district court in the matter").

The United States Supreme Court has held "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of any interpretation that covers the asserted dispute." *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648 (1986) (*quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Here, the Court cannot say with "positive assurance" the 12/28/16 Memorandum of Agreement does not cover all former, present and future employees. The Court, respectfully, should require former, present and future driver and helper and other employees of Liberty Ashes, Inc. covered by the 12/28/16 Memorandum of Agreement to arbitrate their wage claims in this action and dismiss the Complaint. *United Steelworkers*, 363 U.S. at 582-83. Francesco Bellino, in his 5/24/18 Declaration, states Liberty Ashes, Inc. and Local 890, in negotiating the 12/28/16 Memorandum of Agreement, intended the 12/28/16 Memorandum of Agreement to require individual arbitration of all former, present and future employee wage and other claims.[17]   Defendants maintain this includes all of the Named and Opt-In Plaintiffs and any putative class or collective Plaintiffs. Given the direct reference to the Fair Labor Standards Act and the New York Labor Law and "Employees" and "accruing at any time" in the 12/28/16 Memorandum of Agreement, and the express reference to wages and overtime in the 2012-2015 Collective Bargaining Agreement,  Plaintiffs cannot establish with "positive

---

[17] Bellino 5/24/18 Declaration, ¶ 10.

assurance" that the causes of action in the Complaint, and any wage cause of action by a former, present or future Liberty Ashes, Inc. employee  are not covered by the arbitration clauses.

To the extent the Court determines that the agreement is ambiguous as the term "Employee" is a capitalized, but undefined term, resolving this ambiguity requires an interpretation of the operative collective bargaining agreement which must be done by the arbitrator.  *See Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887, 899 (2d Cir. 2015) ("Once arbitrators have jurisdiction over a matter, any subsequent construction of the contract and of the parties' rights and obligations under it is for the arbitrators to decide.") (*internal quotations* and *citations omitted*).  Moreover, it is black letter law that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, **whether the problem at hand is the construction of the contract language itself** or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (U.S. 1983) (emphasis added); *see also Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488 (1989) ("ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration."). For this additional reason the Court should compel arbitration of the Named and Opt-In Plaintiffs and putative class members' claims.

C.   **The Mandatory Arbitration Provision in the 12/28/16 Memorandum of Agreement Applies to All Claims, Including Those That Accrued Prior to the Execution of the 12/28/16 Memorandum of Agreement**

The 12/28/16 Memorandum of Agreement specifically states the parties intended the Memorandum of Agreement to apply to "all claims, accruing at any time".  The 12/28/16 Memorandum of Agreement mandatory arbitration clause applies to Plaintiffs' causes of action, including those accruing prior to the ratification of the 12/28/16 Memorandum of Agreement.

Page 13 of 22.

Binding Second Circuit Court of Appeals' precedent holds that, absent an express temporal limitation in an arbitration agreement, the arbitration agreement applies retroactively. *See Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 481 (2d Cir. 2011); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d. Cir. 1999). The Second Circuit's decision in *Arrigo* is relevant. In *Arrigo* the plaintiff, three months into his employment with the defendant, executed an employment agreement that contained a mandatory arbitration provision for all federal and state statutory claims relating to the plaintiff's employment. *Arrigo v. Blue Fish Commodities, Inc.,* 408 F. App'x 480, 481 (2d Cir. 2011). On appeal the plaintiff argued that the mandatory arbitration provision could not apply to his Fair Labor Standards Act and New York Labor Law wage and hour claims that accrued prior to his execution of the employment agreement. The Second Circuit Court of Appeals rejected this argument, stating the arbitration provision broadly covered "all federal and state statutory claims". The Second Circuit Court of Appeals held: "We therefore conclude that the parties agreed to arbitrate all of Arrigo's unpaid overtime claims, including those accruing prior to the creation of the arbitration agreement." *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011).

Eastern District New York Court Judge Forrest, citing *Arrigo*, recently retroactively enforced a mandatory collective bargaining agreement arbitration clause, staying the Fair Labor Standards Act and New York Labor Law wage and hour claims accruing prior to the ratification of the collective bargaining agreement containing the mandatory arbitration provision. *See Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016). In *Lai Chan*, the plaintiffs brought a wage and hour class action under Federal and State Law. The plaintiffs were labor organization members with a collective

bargaining agreement with the defendant employer. During the pendency of the action the

employees ratified the successor collective bargaining agreement which contained a mandatory

arbitration provision for all federal, state and local wage and hour claims, including FLSA and

New York Labor Law claims. The *Lai Chan* plaintiffs argued the arbitration provision could not

apply to claims accruing prior to the collective bargaining agreement ratification. Judge Forrest

rejected this claim, finding that it was "meritless." *Lai Chan*, 180 F. Supp. 3d at 241. Judge

Forrest, citing the mandate of the Second Circuit Court of Appeals, opined:

> Plaintiffs seek to avoid this mandatory arbitration clause by arguing that the agreement to arbitrate embodied in the 2015 MOA cannot apply retroactively to claims that may have accrued prior to the execution of the 2015 MOA. This argument is meritless. The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate. *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98–99 (2d Cir.1999); *see also Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed.Appx. 480, 481–82 (2d Cir.2011) (summary order); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F.Supp.2d 470, 474 (S.D.N.Y.2010). Significantly, the arbitration provision at issue here contains no such clear limiting language. Furthermore, to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion); *Citigroup, Inc. v. Abu Dhabi Investment Auth.*, 776 F.3d 126, 130 (2d Cir.2015). "While a gateway dispute about whether the parties are bound to a given arbitration clause raises a question of arbitrability for a court to decide," it is the role of the arbitrator, rather than this Court, to resolve issues of contract interpretation and arbitration procedures in the first instance. *Duran v. J. Hass Grp., L.L.C.*, 531 Fed. Appx. 146, 147 (2d Cir.2013) (summary order) (quotation marks omitted); *see UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 654 (2d Cir.2011) (stating that "procedural questions which grow out of the dispute and bear on its final disposition" are generally for the arbitrator to resolve in the first instance (quotation marks omitted)).

*Lai Chan*, 180 F. Supp. 3d at 241. The District Court in *Lai Chan* ordered all of Plaintiffs' claims

were subject to arbitration. In *Lai Chan* plaintiffs sought to certify:

> All current **and former** home care aides, meaning home health aides, personal care aids, home attendants or other licensed or unlicensed persons whose primary responsibilities include the provision of in-home assistance with activities of daily living, instrumental activities of daily living or health-related tasks, employed by Defendant in New York to provide care services to Defendant's elderly and disabled clients in the clients' homes during the period from six years preceding the filing of the Complaint in this case through the present (the "Class Period").

*Lai Chan*, 11/9/15 Complaint, ¶ 21 (emphasis added). The claims referred to arbitration in *Lai Chan* included claims by former employees which accrued prior to the arbitration clause modification in *Lai Chan*. The District Court in *Lai Chan*, on a motion for reconsideration, specifically considered the retroactive application of the collective bargaining agreement class waiver arbitration clause on former employees, and held "a claim predating an arbitration agreement fell with the agreement's scope in the absence of an express temporal limitation, ..." *Lai Chan*, 180 F. Supp. 3d at 244 (ellipsis and brackets added), *citing Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972); *see also Reid v. Supershuttle Int'l, Inc.*, No. 08CV4854 JG VVP, 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) ("[t]he Second Circuit has held that arbitration clauses without an express limitation to 'future' disputes' should be applied to any preexisting claims"). Similarly, the Second Circuit in the *Arrigo* case dismissed Plaintiff's Fair Labor Standards Act claims, even those Fair Labor Standards Act claims accruing prior to the arbitration agreement, finding the arbitration agreement contained no temporal limitation:

> [T]he agreement "to substitute" arbitration for judicial resolution of disputes indicates that the parties anticipated arbitration as the primary method of dispute resolution. As a result, the agreement is at least "susceptible of an interpretation" that it covers preexisting disputes between the parties. *See Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 928

> (2d Cir.1990) (internal quotation marks omitted). "And if there is doubt about that matter—about the 'scope of arbitrable issues'— we should resolve that doubt 'in favor of arbitration.'" *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 4 (2003), *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir.2003). We therefore conclude that the parties agreed to arbitrate all of Arrigo's unpaid overtime claims, including those accruing prior to the creation of the arbitration agreement.

*Arrigo*, 408 Fed. Appx. at 482 (brackets added).

As in *Arrigo* and *Lai Chan*, the 12/28/16 Memorandum of Agreement arbitration clause is broad and covers "all claims, accruing at any time …" and there is no temporal limitation in the 12/28/16 Memorandum of Agreement. As such, the Named and Opt-In Plaintiffs and putative class members who were or are Liberty Ashes Inc. drivers, helpers, welders or mechanics waived their right to proceed with their wage and hour claims in court.

**D.    The Mandatory Arbitration and Class Action Waiver Language in the 12/28/16 Memorandum of Agreement Does Not Violate the National Labor Relations Act**

The United States Supreme Court held mandatory wage arbitration clauses containing class action waivers do not violate the National Labor Relations Act. *Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444, at *3 (U.S. May 21, 2018). The 12/28/16 Memorandum of Agreement is lawful and United States Supreme Court precedent requires its enforcement as to the causes of action in this litigation.

## **CONCLUSION**

For the foregoing reasons the Defendants respectfully request that the Court dismiss the Complaint or stay the action pending submission of any former, present or future Liberty Ashes Inc. employee claim, including any wage claim accruing at any time, to binding individual arbitration, together with awarding Defendants the costs, disbursements and attorneys' fees of this motion and action and such other relief the Court deems just.

White Plains, New York
May 25, 2018                                Respectfully submitted,

                                           Trivella & Forte, LLP

                                           _/s/ *Christopher A. Smith* _____
                                           *Defendants' Attorneys*
                                           1311 Mamaroneck Avenue, Suite 170
                                           White Plains, New York 10605
                                           (914) 949 – 9075
                                           Facsimile (914) 949 – 4752
                                           111csmith111@gmail.com

To:

Denise A. Schulman, Esq.
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, New York 10004
(212) 688-5640
denise@jhllp.com

Daniel M. Kirschenbaum, Esq.
Joseph, Herzfeld, Hester & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, New York 10017
(212) 688-5640 x-2548
maimon@jhllp.com

Finn W. Dusenbery, Esq.
Law Office of Finn W. Dusenbery
26 Broadway, 21st Floor
New York, New York 10004
(212) 583-0030
finn@dusenberylaw.com
*Plaintiffs' Attorneys*