UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CARL ORLANDO, JR., *on behalf of himself and others similarly situated*,

Plaintiff,

-v-

LIBERTY ASHES, INC., *et al.*,

Defendants.

No. 15-cv-9434 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiffs Carl Orlando, Jr., Leonard Menna, Jr., Luis Acevedo, Quamaine Powell, and Ramdeo Persad bring this collective action alleging that their former employers – Liberty Ashes, Inc. ("Liberty Ashes") and its principals – violated various federal and state labor laws. Now before the Court is Defendants' motion to compel arbitration of Plaintiffs' claims and to dismiss the complaint. For the reasons that follow, Defendants' motion is DENIED.

I. BACKGROUND

Defendant Liberty Ashes is a waste management company operated by individual Defendants Francesco Bellino, Michael Bellino, Jr., Stephen Bellino, and Michael Bellino. (Compl. ¶¶ 4–27.) Plaintiffs are individuals who worked for Liberty Ashes prior to October 2015.[1] At all times relevant to this suit, Local 890 of the League of International Federated Employees

---

[1] Specifically, Carl Orlando, Jr., worked for Liberty Ashes from July 2015 to October 26, 2015 (Compl. ¶ 28); Leonard Menna, Jr., was employed by Liberty Ashes from November 2007 to May 2015 (Doc. No. 131 ¶ 16 n.1); Quamaine Powell worked as a driver for Liberty Ashes between August 2014 and September 2015; (*id.* ¶ 16 n.2); Ramdeo Persad held various roles with Liberty Ashes between 2004 and April 2014 (*id.* ¶ 16 n.3); and Acevedeo "worked as a helper on packer trucks from March 2010 until August 2015" (*id.* ¶ 16 n.4).

(the "Union") served as the collective bargaining representative for employees in Plaintiffs' respective roles. (*See* Doc. No. 130 ¶ 4.)

At the beginning of 2012, Liberty Ashes and the Union signed a collective bargaining agreement with an effective term of January 1, 2012 to December 31, 2015 (the "2012 CBA"). (Doc. No. 136-6 (the 2012 CBA) ¶ 26.) The 2012 CBA provided that it applied "to all present and future employees covered by this Agreement and employed by [Liberty Ashes] during the term of this agreement." (2012 CBA at 3.)

On December 1, 2015, Plaintiff Orlando – then a former employee of the company – initiated this action by filing the operative complaint on December 1, 2015. (Doc. No. 1.) The complaint sets out eight causes of action, accusing Defendants of (1) failing to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (2) failing to pay overtime in violation of the New York State Labor Law, N.Y. Lab. L. §§ 650 *et seq.*, (3) failing to provide the wage notices required by New York Labor Law § 195; (4) retaliation in violation of the FLSA; (5) retaliation in violation of the New York Labor Law; (6) failing to pay the federal minimum wage; (7) failing to pay the New York State minimum wage; and (8) not paying Orlando's wages for the last three days of his employment. (Compl. ¶¶ 56–91.) Plaintiff Menna filed a consent-to-sue form on December 21, 2015. (Doc. No. 6.)

On December 22, 2015 – after each of the Plaintiffs had terminated his employment with Liberty Ashes – Liberty Ashes and the Union executed a "Memorandum of Agreement" regarding the continuing relationship between the two entities (the "2015 MOA"). The 2015 MOA provided that a "successor CBA" (the "2016 CBA") would take effect on January 1, 2016 and was to run until December 31, 2018. (Doc. No. 129-2 (2015 MOA) ¶ 3.) The 2015 MOA made some changes to the compensation available to Liberty Ashes employees (which are not relevant to this action),

but otherwise provided that "[a]ll other terms and conditions of employment as contained in the expired CBA, and any MOA executed between the parties after the execution of the prior CBA, shall remain in full force and effect." (*Id.* ¶ 4.) On January 8, February 1, and February 5, 2016, Plaintiffs Acevedo, Powell, and Persad joined this action respectively. (Doc. Nos. 19, 23, 26.)

On December 28, 2016 – more than a year after Orlando commenced suit and more than ten months after the remaining Plaintiffs joined this action – Liberty Ashes and the Union entered a second memorandum of agreement (the "2016 MOA"). (Doc. No. 129-3 (2016 MOA).) The 2016 MOA modified the grievance procedure set out in the 2016 CBA, adding the following arbitration clause:

> To ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour statutes, all claims, accruing at any time, brought either by the Union or Employees, concerning an employee's hours and wages including, but not limited to, claims arising under the Fair Labor Standards Act ("FLSA"), the New York Labor Law or Local Law (collectively, the 'Covered Statutes'), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in the collective bargaining agreement. There shall be no right or authority for any of the above claims to be arbitrated on a class wide basis. The costs of arbitration shall be borne equally between the Union and the Employer and not the employee.

(2016 MOA ¶ 1.) In exchange for adopting this arbitration clause, Liberty Ashes agreed to pay each "Employee" a cash bonus and to give "all Employees" a raise and an annual allowance for the purchase of work boots. (*Id.* ¶¶ 2–5.)

Defendants moved to compel arbitration on March 6, 2017 (Doc. No. 98), which Plaintiffs opposed on the grounds that they were no longer employees of Liberty Ashes and therefore not bound by the terms of the 2016 MOA. However, when briefing on that motion revealed several factual disagreements, the Court concluded that limited discovery was appropriate. (*See* Doc. No. 118 at 2.) Accordingly, on January 31, 2018, the Court denied Defendants' motion to compel

3

arbitration without prejudice to renewal. (*Id.* at 1.) Defendants renewed their motion on May 25, 2018 (Doc. No. 128), and the motion was fully briefed on July 20, 2018 (Doc. No. 150).

## II. LEGAL STANDARD

Arbitration is a matter of contract, and parties may be forced to arbitrate a dispute when they have previously agreed to arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also FSP, Inc. v. Societe Generale*, 350 F.3d 27, 30 (2d Cir. 2003) ("Although the FAA expresses a strong federal policy favoring arbitration, '. . . a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" (internal citation omitted) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). To determine whether a dispute is arbitrable, a court must decide two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)). In accordance with the Federal Arbitration Act ("FAA"), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

"Under the FAA, threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator. . . . [But] the presumption may be overcome where the parties 'clearly and unmistakably' agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute, or whether it is enforceable." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250–51 (2d Cir. 2019) (internal citations omitted); *see also All. Bernstein Inv. Research & Mgmt., Inc. v. Shaffran*, 445 F.3d 121, 126 (2d Cir. 2006) (internal quotations omitted) ("[T]he issue of whether the parties agreed to arbitrate a matter is to be decided

4

by the courts and not the arbitrators, unless the parties clearly and unmistakably provide otherwise."). Importantly, though, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc.*, 934 F.3d at 251. "[W]hether an entity is a party to the arbitration agreement also is included within the broader issue of whether the parties agreed to arbitrate." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999).

## III. DISCUSSION

Defendants seek to compel arbitration pursuant to the 2016 MOA, which requires all wage claims brought by "Employees" to be submitted to individual arbitration. (*See* 2016 MOA ¶ 1.) As an initial matter, Defendants argue that the question of whether or not Plaintiffs here – former employees – are "Employees" within the meaning of the 2016 MOA is one for the arbitrator to decide because it goes to the scope of the agreement. (Doc. No. 131 at 13; Doc. No. 146 at 1.) But the issue is better framed as whether Plaintiffs agreed to arbitrate at all, since an agreement to arbitrate indisputably exists, but it is not clear whether Plaintiffs are parties to that agreement. This threshold inquiry is the type usually decided by a court unless the parties have "clearly and unmistakably" agreed to arbitrate that issue. *See Doctor's Assocs., Inc.*, 934 F.3d at 251 (citing *Granite Rock Co. v. Int't Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)). No such clear indication appears on the face of the contract, and Defendants do not point to any specific language in the agreement in their papers. Therefore, the Court concludes that it, rather than an arbitrator, must determine whether Plaintiffs are bound by the 2016 MOA.

To start, it is clear that the 2012 CBA applies to Plaintiffs. That agreement, which ran from 2012 to 2015, governed the relationship between Liberty Ashes and its "present and future employees." (2012 CBA at 1.) All five Plaintiffs worked for Liberty Ashes during that period and are thereby bound by its terms. However, by the time the 2012 CBA was modified by the 2015

5

MOA, 2016 CBA, and 2016 MOA, Plaintiffs were all former employees. Therefore, the 2016 MOA, which modified the 2016 CBA to require "present and future employees" to submit to arbitration, did not apply to Plaintiffs. *See Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016). Because none of the Plaintiffs in this action worked for Liberty Ashes during the term of the 2016 CBA, they are not bound by it.

Defendants argue that because the 2016 MOA provides for the arbitration of all wage-and-hour claims brought by "Employees" – as opposed to the "present and future Employees" identified in the 2012 CBA or 2015 MOA – the 2016 MOA extends to wage-and-hour claims brought by "all past, present, and future employees" of Liberty Ashes that were members of the Union. (Doc. No. 130 at 4–7.) This Court recognized in *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-cv-5803 (RJS), ECF Doc. No. 146 at 5–6 (S.D.N.Y. November 2, 2017), that an employer and a union *may* contract to require certain past employees to submit their claims to arbitration if the union continues to represent the past employee. There, the plaintiff, a past employee, was still a member of, and therefore represented by, the union at the time the union and employer negotiated and executed the relevant arbitration agreement, which explicitly applied to "past employees." *Id.* Here, by contrast, the agreement contains no clear language or other evidence to suggest that the arbitration clause was intended to apply retroactively to former employees.[2] Instead, read in context, it is clear that "Employees" refers only to "present and future" Liberty Ashes employees at the time of the 2016 CBA, and cannot refer to individuals who left the company before the 2015 MOA was adopted. The benefits provided by Liberty Ashes in exchange for the arbitration provision – (1) a one-time, $156 bonus, (2) a 17.5 cents-per-hour raise, (3) a $200 annual boot

---

[2] The parties disagree about whether the Union was authorized to bargain on Plaintiffs' behalf in the 2016 MOA. *See* Doc. No. 131 at 4–5; Doc. No. 135 at 12–20.) The Court need not resolve this dispute since the 2016 MOA, by its text, does not apply to former employees.

6

allowance, (4) a restructured uniform cleaning service, and (5) a locker room (2016 MOA ¶¶ 2–8) – clearly inured to present employees and, to some extent, to future employees, but not to past Liberty Ashes workers, and the parties agree that Plaintiffs have not received any of them. Accordingly, the parties' agreements compel the conclusion that the 2016 CBA and 2016 MOA did *not* bind Plaintiffs to arbitrate their wage-and-hour claims.

IV. CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and to dismiss this case is DENIED.

IT IS HEREBY ORDERED that the parties shall file a proposed revised case management plan on the Court's electronic docket no later than two weeks from the date of this Order. A template for that case management plan may be found at https://nysd.uscourts.gov/hon-richard-j-sullivan.

The Clerk of Court is respectfully directed to terminate the motion pending at document number 128.

SO ORDERED.

Dated:     January 15, 2020
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation